The NAVAJO TRIBE OF INDIANS

v.

The UNITED STATES.

No. 229.

United States Court of Claims.

April 18, 1979.

William C. Schaab, Albuquerque, N. M., attorney of record for plaintiff. Rodey, Dickason, Sloan, Akin & Robb, Paul D. Barber and Sarah W. Barlow, Albuquerque, N. M., of counsel.

Dean K. Dunsmore, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant.

Jack Joseph, Chicago, Ill., amicus curiae.

Frances L. Horn, Washington, D. C., for Three Affiliated Tribes of the Fort Berthold Reservation, Shoshone Bannock Tribe

of the Fort Hall Reservation, Blackfeet and Gros Ventre Tribes of the Blackfeet and Fort Belknap Reservations, Klamath and Modoc Tribes and Yahooskin Band of Snake Indians, Te-Moak Bands of Western Shoshone Indians, Yankton Sioux Tribe, and Turtle Mountain Band of Chippewa Indians, amicus curiae. Wilkinson, Cragun & Barker, Charles A. Hobbs, Jerry C. Straus, and Jerry R. Goldstein, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS, NICHOLS, KUNZIG, BENNETT and SMITH, Judges, en banc.*

## ON DEFENDANT'S REQUEST FOR REVIEW OF ORDERS OF THE TRIAL JUDGE

### PER CURIAM:

This case is before the court on the government's request for review of two orders of Trial Judge C. Murray Bernhardt, dated March 22, 1978 and May 3, 1978, granting rehearing of an order of the Indian Claims Commission that limited the claim the plaintiff Indian tribe could present in this case. After considering the briefs, which include filings by *amici curiae,* but without oral argument, we affirm those orders of the trial judge.

### I.

On August 8, 1951, the Navajo Tribe filed a timely petition with the Indian Claims Commission seeking compensation under section 2 of the Indian Claims Commission Act, 25 U.S.C. § 70a, for the extinguishment of the tribe's title to lands by the Treaty of June 1, 1868, 15 Stat. 667. The plaintiff sought judgment "in the amount of the fair value of the lands and interest in lands, wrongfully taken from petitioner, . . . *saving and excepting only those lands partially restored to the petitioner embraced within its present reservation,* . . . and such other further and general relief as to the Commission may seem just and warranted." (Emphasis added.)

In 1954, well beyond the applicable limitations period (25 U.S.C. § 70k), the tribe filed an amended petition which did not contain the italicized language, *supra.*

In December 1976, the government filed with the Commission a motion for summary determination that the United States was not required to compensate the plaintiff for any lands it returned to the tribe after the date of the treaty. The government now contends, although it did not explicitly so argue in support of its motion, that (1) in the initial petition the plaintiff limited its claim to the value of lands located beyond the exterior boundaries of the Navajo Reservation, and (2) since the amended petition was filed after the statute of limitations had run, that document could not expand the claim to include compensation for lands that, when added to the reservation territory, were unavailable for tribal use and occupancy. These latter lands, located within the boundaries of the reservation, were added to the original reservation after 1868 but were subject to prior third-party rights.[1] The extent of the tribe's total aboriginal land holdings, which the Commission determined in *Navajo Tribe v. United States,* 23 Ind.Cl.Comm. 244 (1970), is no longer in dispute.

The Commission granted the government's motion for summary determination and limited the plaintiff's claim to lands "which the United States did not subsequently return to the Navajo Tribe." *Navajo Tribe v. United States,* 41 Ind.Cl. Comm. 85, 96 (1977). On November 29, 1977, the tribe filed a motion for rehearing with the Commission. The Commission heard oral argument on it, but, without ruling upon the motion, on February 15, 1978, transferred the case to this court pursuant to the Act of October 8, 1976, Pub.L. No. 94–465, 90 Stat. 1990.

On March 17, 1978, this court *en banc* entered an order authorizing Trial Judge Bernhardt to pass upon plaintiff's undecid-

---

* The court has ordered that this controversy be determined *en banc.* See Rule 7(b).

1. The third-party rights apparently included railroad grants, state land grants, individual Indian allotments, missions, power sites, homestead patents, and national monuments.

ed motion. The trial judge issued two orders, dated March 22, 1978 and May 3, 1978, in which he concluded that the plaintiff's claim did include lands that, although added to the reservation after 1868, were unavailable to the tribe because they were subject to the prior rights of other persons.

In his order of March 22, 1978, the trial judge held that, at the time of the original petition, neither party was aware of the problem of third-party rights to lands within the reservation; that the plaintiff had intended by its exclusion of "restored" lands to exclude from its claim only those lands that were added to the reservation after 1868 and were actually available for tribal use and occupancy;[2] and that the 1954 amended petition merely clarified the ambiguous language in the original petition by seeking to place upon the government the burden of proving, as gratuitous offsets under 25 U.S.C. § 70a, any post–1868 cessions of aboriginal title lands to the tribe. The trial judge found that, when it granted the government's original motion for summary determination, the Commission itself was not apprised of the lurking problem of third-party rights.[3] The trial judge therefore concluded that; in allowing the motion, the Commission misunderstood the issue to be whether the tribe could be compensated for *all* the aboriginal lands ceded to the United States in 1868, including lands actually restored to tribal use and occupancy, and that such a claim would have been an impermissible expansion of the original claim. The trial judge viewed the "delimiting" language of the original petition and its absence without explanation from the amended petition as reflecting the tribe's

failure to focus upon the issue of third-party rights, not a conscious attempt to limit the scope of the claim.[4] The trial judge concluded that the original petition placed the defendant on reasonable notice that the tribe would seek recovery for all aboriginal lands not in the tribe's actual possession, and that the 1954 amendment did not expand the scope of the original claim.

The trial judge determined that the real issue in the case was allocation of the burden of proving restoration of lands to the tribe after 1868. Unlike the Commission, which merely stated that the existence of third-party rights reducing the value of later additions to the reservation was "subject to proof," *Navajo Tribe v. United States,* 41 Ind.Cl.Comm. 140, 143 (1977), the trial judge placed the burden of proving offsetting transfers on the government. He reasoned that (1) any cessions of land to the tribe following the original taking were offsets, (2) the plaintiff in its original petition did not assume the burden of proving such offsets, and in the amended petition sought to place the burden expressly on the defendant, (3) the government affirmatively asserted such offsets as a defense, and (4) the government, as fiduciary and in practical terms, was better able to produce records of land transfers than were the Indians. The trial judge therefore ordered the government to provide specific information regarding post–1868 cessions in order to determine their extent and eligibility as offsets under 25 U.S.C. § 70a.

The government's request for review raises both substantive and procedural questions. The substantive questions are (1) whether the plaintiff's claim covers

---

**2.** The trial judge referred to several post–1951 statements of the plaintiff that indicated a continuing lack of awareness of the problem of third-party rights in land within the reservation boundaries. Among these was a statement in 1961 that the tribe did not claim any lands within the reservation because "they now have that."

**3.** The Commission had stated that it was "not made aware of any specific 1868 aboriginal title areas in the present reservation that had not been returned to the tribe . . .." *Navajo Tribe v. United States,* 41 Ind.Cl.Comm. 140, 142 (1977). The Commission also explained

that its earlier statements that the reservation was not part of the plaintiff's claim "were always subject to proof that within the present reservation there were certain 1868 aboriginal title areas that had never been returned to the plaintiff tribe. In no way did the Commission ever intend to excise such 1868 aboriginal title areas from the plaintiff's aboriginal title claim." *Id.* at 143.

**4.** The trial judge expressed considerable doubt over whether the plaintiff's counsel had the contractual authority to waive so significant a part of the tribe's claim without express consent of the plaintiff.

third-party lands located within the reservation, (2) whether the provision for gratuitous offsets (25 U.S.C. § 70a) is applicable in this case, and (3) whether the defendant properly was required to prove post–1868 transfers of land to the tribe. The procedural issues concern the review of nonfinal rulings of trial judges in cases the Indian Claims Commission has transferred to this court.

## II.

The threshold issue is whether the rulings of the trial judge are reviewable at this time. This depends upon (A) whether review is governed by the Rules of this court or by the Indian Claims Commission Act, 25 U.S.C. § 70s(b), and (B) if the Rules of this court apply, whether the trial judge's rulings were "dispositive" and hence reviewable as of right, or procedural and not reviewable as of right.

A. Under the Indian Claims Commission Act, interlocutory appeal from Commission orders to this court was limited to determinations "establishing the liability of the United States." 25 U.S.C. § 70s(b). If, in determining the motion for rehearing that was filed with the Commission, the trial judge in effect were functioning as the Commission and appeal of his rulings were subject to the same limitations that would have governed the Commission's decision on the motion, then his rulings probably would not be appealable, since they do not establish the liability of the United States. They merely decide that the plaintiff may assert a claim that the United States contends plaintiff cannot assert, and place upon the United States the burden of proving certain facts that are significant in determining that claim. Under the trial judge's rulings,

the United States might never be held liable on the claim that the plaintiffs now may assert; his rulings, therefore, did not establish any liability of the United States.

Neither the parties nor the *amici* who have filed briefs on the procedural issues in this case urge this limitation upon our review of the trial judge's rulings, and we reject it. The existence of the Indian Claims Commission ended on September 30, 1978, and all of its pending cases were transferred to this court. When we consider those cases, we function as a court, not as the Commission. To treat the trial judge's rulings in this case as though he were the Commission would be to adopt a legal fiction that would be unnecessary and unwise.

■ Whatever may have been the reasons that led Congress to impose the limitations it did upon review of Commission orders, the situation is quite different once it is this court and not the Commission that has the responsibility for deciding a case. Our trial judges will perform the same function in cases transferred from the Commission as they perform in the myriad of other cases originally filed in this court. There is no reason to apply different standards for interlocutory review in the cases transferred from the Commission than we apply in all other cases.

B. The standard under our Rules for determining the reviewability as of right of trial judges' rulings turns upon whether those rulings are "dispositive" or "procedural." [5] Plaintiff argues that the trial judge's rulings here were procedural for two reasons: (1) plaintiff's motions, captioned "Motion for Rehearing" and "Motion for Reconsideration," are not within the five categories that Rule 52(a) lists as dispositive [6] and

---

**5.** Rule 52(a) defines dispositive motions to "include" five specified categories. A trial judge may rule upon a dispositive motion only if the court refers it to him, and his ruling is reviewable as of right pursuant to Rule 54(b)(3). Rule 52(c) provides that, except for dispositive motions and motions for rehearing or for a new trial, or to alter or correct a judgment or order or relieve a party from it, all motions are procedural. Procedural orders of a trial judge are subject to interlocutory review only if the trial

judge certifies it for such review or if the court grants review on a party's request. Rule 53(c).

**6.** Rule 52(a) provides:

"(a) Dispositive Motions Defined: Dispositive motions include (1) motions for judgment on the pleadings (Rule 38); (2) motions asserting defenses based upon lack of jurisdiction of the subject matter or the person, or upon failure to state a claim upon which relief can be granted (Rule 38); (3) motions to dismiss (Rule

therefore were procedural motions; (2) since in his order of March 22, 1978, the trial judge ruled that the real issue raised by the plaintiff's motions was where the burden of proof should lie, his rulings on that issue necessarily were procedural.

Plaintiff gives Rule 52(a) an unduly narrow reading. The rule does not state that only the five categories of motions it lists are dispositive but that dispositive motions "include" those categories. There may be motions that do not fit explicitly within any of those categories but which nevertheless must be viewed as dispositive because of the effect the ruling on them will have upon the case. Moreover, Rule 52(c) states that "[e]xcept for dispositive motions and the motions referred to in Rules 151 and 152, all motions are regarded as procedural motions for the purposes of these rules." One of the motions referred to in Rule 151 is a motion for rehearing. Although the motion for rehearing that Rule 151 contemplates may be one rendered after a final decision on the merits, the rule does indicate that a motion for rehearing may involve nonprocedural issues. Finally, the trial judge himself stated that the motion in this case went "beyond a mere procedural problem."

◼ We conclude that the plaintiff's motions were dispositive and not procedural, and therefore that the defendant is entitled to appeal from their grant as of right. The Commission's grant of the government's motion for summary determination barred the plaintiff from asserting what may be a substantial portion of its claim that the government improperly extinguished its title to aboriginal lands. The effect of the trial judge's rehearing and reversal of that ruling will be to permit the plaintiff to reassert the substantial claim which the Commission's order precluded it from presenting. The plaintiff's motions did not seek to define or specify the procedures to be followed in this case but urged the dispositive point that the claim the plaintiff had filed embraced lands which were sub-

ject to third-party rights when they were added to the reservation. A denial of the plaintiff's motions would have terminated finally that significant portion of the litigation. The fact that the decision of that issue may well largely depend upon who has the burden of proof to show what lands were actually returned does not alter the fundamentally dispositive character of the relief the plaintiff sought in its motion for rehearing.

### III.

◼ A. On the merits, we see no reason to disturb the rulings of the trial judge that plaintiff's claim covers lands added to the reservation after 1868 that were subject to the rights of third persons. The trial judge's rulings turn on whether the plaintiff, when it excluded from the claim presented in the original petition "those lands partially restored to the petitioner embraced within its present reservation," intended to exclude lands that were unavailable to the Indians because third persons had rights in them. The answer to that question, about which the parties themselves apparently have been confused, is deeply imbedded in the facts of this particular case. It involves the interpretation of ambiguous pleadings and discerning the understanding of those documents by the parties. We cannot say that the trial judge was wrong in concluding (1) that the claims in the original petition did not exclude those lands, and (2) that the amended petition did not constitute the filing of a new claim after the limitations period for the filing of claims before the Indian Claims Commission had expired.

◼ B. We also agree with the trial judge that any transfers of land to the plaintiff after 1868 were offsets under 25 U.S.C. § 70a, and that the United States has the burden of proving such offsets. In order to establish a *prima facie* case, the plaintiff was required to prove that the government extinguished the plaintiff's ab-

---

102); (4) motions for summary judgment (Rules 101 and 163); and (5) motions for judg-

ment on trial judge's recommendation or report (Rules 54(b)(3)(iii) and 141(b))."

original title to the lands that were not part of the reservation created under the 1868 treaty. In its answer to the petition before the Commission, the government stated that if it were held liable to the tribe, it would establish, as an affirmative defense, the value of aboriginal lands it had returned after 1868. Since the value of those lands would reduce the government's liability to the plaintiff, those lands constitute offsets to the plaintiff's claim under 25 U.S.C. § 70a.

Practical considerations support the decision of the trial judge to place upon the government the burden of proving any offsets in this case. The government is in a better position to produce the records relating to returned lands. Indeed, in its answer the government itself recognized that it and not the plaintiff had the burden of proof on this issue. Moreover, since the government acts as fiduciary to the tribe in the administration of reservation lands, it, rather than the beneficiaries of those holdings, should bear the burden of proof. In all the circumstances we cannot say that the trial judge's allocation of the burden of proof on the returned lands issue constituted legal error or abuse of discretion.

The defendant attempts to shift to the plaintiff the burden of proof on the returned lands issue by framing the question in jurisdictional terms. It argues as follows: the only timely petition the plaintiff filed—the original 1951 filing—excluded from its claim all lands returned to the Indians after the treaty; the plaintiff's attempt in its 1954 filing to broaden its claims to include returned lands was barred by the statute of limitations; since the statute of limitations is jurisdictional before this court and the Commission, those tribunals may make an award only for lands not returned; the plaintiff has the burden of showing jurisdiction; therefore the tribe, and not the defendant, is required to prove which lands were not returned, since it is only with respect to those lands that the court has jurisdiction to make an award.

The short answer to this argument is that, contrary to defendant's assumption, we hold that the original 1951 petition did include lands which, although added to the reservation and in this technical sense "returned" to the tribe, were not available to the Indians. Since the basic premise upon which defendant's jurisdictional argument rests is unsound, the contention falls with it. The defendant's jurisdictional argument is but another way of framing the basic issue of the scope of the claims raised in the plaintiff's original petition. The reasons discussed above that have led us to conclude that the plaintiff's claim covers lands which, when added to the reservation, were subject to third-party rights, also compels rejection of the defendant's argument that plaintiff should bear the burden of proof on the returned lands issue.

WE THEREFORE AFFIRM the orders of the trial judge and remand the case for further proceedings in accordance with this opinion.

