**GILA RIVER PIMA-MARICOPA INDIAN COMMUNITY,**
Plaintiff-Appellant,

v.

**The UNITED STATES,**
Defendant-Appellee.

No. 86-1298.

United States Court of Appeals,
Federal Circuit.

June 8, 1989.

Alfred S. Cox, Cox and Cox, Phoenix, Ariz., argued for plaintiff-appellant. With him on the brief were Z. Simpson Cox and Alan J. Cox.

Elizabeth Ann Peterson, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Roger J. Marzulla, Asst. Atty. Gen., Jacques B. Gelin and Bernard Sisson.

Before FRIEDMAN and RICH, Circuit Judges, and BENNETT, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a judgment of the United States Claims Court (Harkins, J.), entered February 27, 1986, and reported as *Gila River Pima-Maricopa Indian Community v. United States*, 9 Cl.Ct. 660

(1986). The Claims Court dismissed the claims brought by the Gila River Pima–Maricopa Indian Community (appellant/the Community) on grounds it failed to establish the United States (appellee/the government) breached its fiduciary trust or failed to deal fairly and honorably with the Community. The Community appeals under 28 U.S.C. § 1295(a)(3) (1982). We affirm.

## BACKGROUND

This case was originally filed in the Indian Claims Commission on August 14, 1951, as cause of action IV in Docket 236. The case was subdivided into Dockets 236–A through 236–N. Dockets 236–F and 236–I, the subject of the instant appeal, were never decided by the Commission. Eventually these dockets were transferred to the United States Court of Claims and then to the United States Claims Court.[1] They were consolidated for trial and are in this appeal.

The Gila River Indian Community (formerly the Gila River Pima–Maricopa Indian Community) is recognized by the Secretary of the Interior.[2] The Pima and Maricopa Indians had developed as an agricultural society which utilized irrigation methods using water from the Salt and Gila Rivers in Arizona. After the creation of the reservation in 1859 some of the river water was diverted by settlements upstream and thus hindered the Community's ability to irrigate the farms. In 1904 the United States undertook several irrigation projects in order to protect the Community's ability to irrigate at least the same number of acres as farmed prior to the upstream diversions. In connection with this effort the United States, acting as a fiduciary for the Community, also leased some of the reservation lands.[3] The Community brought this action claiming the United States breached its fiduciary duty of trust in its administration of these leases. There are six claims in Dockets 236–F and 236–I decided by the

Claims Court and now appealed. All of the claims invoke the trust relationship.

### Issues on Appeal

1. Whether the trial court erred in holding the government did not breach its duty of trust in:

    a. requiring lessees to contract with the Salt River Valley Water Users' Association (SRVWUA) for water to which the Community was already entitled;

    b. requiring that lessees obtain irrigation water only from off-reservation sources;

    c. failing to obtain reasonable cash rentals from lessees;

    d. entering into successive development leases on the same tract of reservation land;

    e. discouraging, delaying, and withholding approval of development leases.

2. Whether the trial court erred in deciding the issue of whether the government breached its duty under the fair and honorable dealings standard to protect the ground-water resources on the reservation.

## OPINION

Cases transferred from the Indian Claims Commission to the Court of Claims pursuant to Pub.L. No. 94–465, § 2, 90 Stat. 1990 (1976), and in this case subsequently to the Claims Court, are reviewed as if they had originated in the Claims Court. *See Navajo Tribe of Indians v. United States*, 597 F.2d 1362, 220 Ct.Cl. 117, 123–24 (1979). In reviewing a decision of a trial court this court cannot make factual findings de novo. The appellant must show the trial court's findings are clearly erroneous or, if correct, cannot support the trial court's legal conclusion.

---

1. For a detailed review of the procedural history see *Gila River*, 9 Cl.Ct. at 661.

2. For detailed general background information regarding the Pima and Maricopa Indians and the Gila River Indian Reservation see *Gila River Pima–Maricopa Indian Community v. United*

States, 24 Ind.Cl.Comm. 301 (1970), and other cases cited in *Gila River*, 9 Cl.Ct. at 661 n. 4.

3. For a detailed review of the government's irrigation projects and leases in issue see *Gila River*, 9 Cl.Ct. at 661–82.

*Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 7 USPQ2d 1606 (Fed.Cir.1988); FRCP rule 52(a).

### 1. *Breach of Trust*

#### a. *Tempe Drain Water*

■ Under 1917 and 1923 contracts with the Tempe Drainage District and its successor, the Salt River Valley Water Users Association (SRVWUA), appellant is entitled to drainage water from the Tempe Drain. When reservation land with access to this water supply was leased the rent paid should have reflected the value of the water. Appellant contends the government breached its duty of trust by requiring the lessees to purchase such water, owned by the Community, from the SRVWUA, a government organization independent from the Community, and thus the government rather than the Community received payments for the water.

The trial court found that the leases did not require, as alleged, that the lessees pay SRVWUA for the Tempe Drain water but only that they purchase water for needs exceeding those met by the Tempe Drain water. Appellant argues that since two of the contracts are for farms outside of the SRVWUA boundaries the water delivered to those farms must have been water from the Tempe Drain and owned by the Community. Whether the law permitted SRVWUA to provide Tempe Drain water to farms outside the SRVWUA boundaries is not dispositive of breach of trust since appellant has failed to show SRVWUA was paid for any such waters. The trial court did find that tail water in the Tempe Drain was provided to lessees without charge. Thus appellant fails to meet its burden of showing the trial court was clearly erroneous in finding no breach of trust on this issue.

#### b. *Prohibition of Developing Wells*

The Community contends the government breached its duty of trust in prohibit-ing lessees from drilling wells. This, appellant argues, injured the Community since the lessees would have installed wells but for this prohibition. This in turn would have increased the value of the land and therefore the land would have merited a higher rental rate on subsequent leases. The Community appeals the trial court's decision on the grounds the court erred in determining and applying Arizona law on water rights; in not finding that federal law, not state law, governed the issue; and in finding the Indian Bureau reasonably interpreted the Buckeye/Arlington settlement contract to prohibit drilling on the leased lands.[4]

■ State law is not applicable to Indian reservations unless expressly so provided by an Act of Congress. *Winters v. United States,* 207 U.S. 564, 577, 28 S.Ct. 207, 211, 52 L.Ed. 340 (1908); *Colville Confederated Tribes v. Walton,* 647 F.2d 42, 52–53 (9th Cir.1981). Thus, an examination of Arizona law on water rights is unnecessary. The Claims Court found the Indian Bureau and Pima agency reasonably interpreted the Buckeye/Arlington litigation settlement (settlement agreement of 1941 approved by Congress in 1947) to permit drilling only on reservation land which was within the San Carlos Irrigation Project (SCIP) or on lands named in the settlement. The Community has not shown that the settlement agreement made any distinction between percolating ground water or subterranean flows. Appellant's contention is that the settlement agreement did not prohibit irrigation of lands outside the SCIP area with non-Gila River subsurface flow water. Yet appellant failed to show the trial court erred in finding that the evidence did not establish that water on the leased land in question was non-Gila River subsurface flow or was solely percolating ground water. The contention by appellant that Arizona law creates a presumption that ground water is percolating rather than subsurface flow is inapposite since state law is not binding. *Winters,* 207 U.S. at 577, 28 S.Ct. at 211. Accordingly, appellant fails to meet its burden of showing the

---

**4.** For background on the Buckeye/Arlington settlement see *Gila–River,* 9 Cl.Ct. at 683–85.

trial court erred as a matter of law or was clearly erroneous as a matter of fact in finding no breach of trust on this issue.

### c. *Reasonableness of Rents*

The Community contends the cash rental rates for the leased sections were sufficiently below market rates so as to constitute a breach of trust. The Community contends the primary reasons for the allegedly too-low rental rates were the government's improper prohibition of well-drilling and the improper payment to SRVWUA by lessees for Tempe Drain water owned by the Community. As discussed above, we have already determined that the government did not breach its duty of trust on those issues. Thus to the extent the appeal of the Claims Court's finding on the issue of reasonableness of rents depends on the prohibition of well-drilling and Tempe Drain water issues, the Community has failed to show the Claims Court's findings were clearly erroneous. As the Claims Court pointed out in detail, many factors not under control of the Interior Department influence rental on leased Indian lands. The Community did not meet its burden of showing how these factors were not excusable so far as the government's responsibilities were concerned.

### d. *Successive Development Leases*

Appellant claims the government breached its duty of trust by failing to require lessees to develop fully the leased land during the first term, thus making it more valuable for the next term.[5] The government never undertook such an obligation. Appellant argues the successive leases resulted in illusory improvements since the leases did not require more development and the government did not enforce the provisions which did require development. The Claims Court found the lack of an adequate water supply was the primary hindrance to full development of the property. Though maximum rentals could not be obtained without this ensured water

supply, partial development was preferable to no development as it brought in income and improvements that otherwise would not have occurred. Appellant has failed to prove these findings of the Claims Court were clearly erroneous.

### e. *Withholding Lease Approval*

Appellant claims the government unreasonably discouraged, delayed, and withheld leases which constituted a breach of the government's trust to manage the land consistently with the Community's best interest. The Community cited instances which it believed evidenced this alleged breach.[6] The Claims Court found the evidence did not show any unreasonableness on the government's part in any instance. With regard to the lease withheld for 3 years pending a survey for a military air base, a condemnation action was settled, the Community was paid for the land, and this claim was agreed to be withdrawn. The Community fails to show the government either did not pay full compensation for the land or that the delay was unreasonable. The Claims Court described the claim as absurd. Accordingly, the Community has not met its burden of showing the decision of the Claims Court on this issue was clearly erroneous.

### 2. *Jurisdiction over the Groundwater Claim*

Appellant contends the Claims Court erred in deciding the depletion of groundwater issue since the Community did not raise that issue except to rebut the government's proposed findings of fact. The trial court documents indicate otherwise. The Community's petition before the Claims Court alleges:

9. Defendant has not only prevented petitioner from pumping petitioner's percolating waters but also prevented petitioner from pumping or in any way utilizing percolating waters adjacent to its

---

5. For a detailed review of the types of improvements required in the leases in issue see *Gila–River,* 9 Cl.Ct. at 690–94.

6. For a detailed description of the alleged discouraged, delayed, or withheld leases see *Gila River,* 9 Cl.Ct. at 694–97.

reservation, to petitioner's great damage. [Petition at 3.]

The Community's opening brief states:

II. *Fair and Honorable Dealings Required Defendant to Protect Plaintiff's Irrigation Agriculture.*

....

As in *Colville* and *Aleut*, defendant owed a duty to protect plaintiff's rights to irrigation water. [Plaintiff's opening brief to the Claims Court at 4 and 11.]

....

III.B. ... Non-use of Reservation groundwater served only to permit third parties off-Reservation to drain groundwater from under Reservation. [*Id.* at 14.]

Last, the Community's requested findings of fact state:

9(j). ... The groundwater pumping from wells adjacent to the Reservation mined water from the basin underlying Reservation [footnote omitted].

9(k) On July 24, 1940, Assistant Director Clotts reported to [the] Washington office Director of Irrigation that off-Reservation pumping depletes water available to the Reservation [footnote omitted].

9(*l*) On September 17, 1940, field Aide Plake reported to Superintendent Robinson about [footnote omitted]

the depletement of the supply [of groundwater] by the increased development of wells in the areas just outside the reservation boundary that are lowering the underground water [on the Reservation]....

Plaintiff's requested findings of fact on liability at 41. (The two bracketed insertions were added by appellant.) The government's requested findings of fact on liability were filed March 18, 1981. Appellant's assertion that it only raised the groundwater depletion issue in response thereto is untrue. The Community's petition was filed June 12, 1968, and its opening brief and requested findings of fact on liability were filed October 16, 1980. Accordingly this issue was before the Claims Court. Since appellant has not challenged the decision of the Claims Court on the merits of this issue, it must stand.

## CONCLUSION

The Claims Court found that the government did not breach its duty of trust or duty of fair and honorable dealings in representing the Community's interests in leasing and managing the reservation lands and water resources. Finding no legal error, clearly erroneous fact-finding, or abuse of discretion in the judgment of the Claims Court, we affirm.

AFFIRMED.