Howard A. FROMSON,
Plaintiff–Appellant,

v.

**WESTERN LITHO PLATE AND SUP-
PLY CO. and Bemis Company, Inc.,**
Defendants/Cross–Appellants.

**Appeal Nos. 88–1039, 88–1061.**

United States Court of Appeals,
Federal Circuit.

Aug. 4, 1988.

ject to prejudgment interest." We affirm in part, vacate in part, and remand.

## I. BACKGROUND

Lithography, Fromson's invention, the prior art, and the proceedings in the United States Patent and Trademark Office (PTO), are described in earlier opinions. *See* 5 USPQ2d at 1538; *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 219 USPQ 1137 (Fed.Cir.1983) (*Fromson I*); *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 225 USPQ 26 (Fed.Cir.1985) (*Fromson II*); *Fromson v. Advance Offset Plate, Inc.*, 837 F.2d 1097 (Fed.Cir.1987) (*Fromson III*) (unpublished).

### (a) *The Judgment*

After a bench trial conducted February 17 through March 5, 1987, the court entered this judgment on September 30, 1987:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and it is entered in favor of plaintiff on his complaint.
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendant shall pay plaintiff royalties at the rate of 0.825% on its infringing products, subject to prejudgment interest.

### (b) *The Memorandum Opinion*

The court accompanied its judgment with a Memorandum Opinion setting forth a complete set of findings and conclusions on validity, infringement, and laches, and citing the evidence supporting those findings.

The court's sole reference to willful infringement and attorney fees is:

> The Court does not find wilful infringement by Western such as would support a treble damage award. Neither does the Court find this to be an appropriate case for the award of attorneys' fees.

5 USPQ2d at 1334.

The court's sole reference to prejudgment interest is the same as that appearing in the judgment; i.e., "subject to prejudgment interest." *Id.*

---

John E. Lynch, Felfe & Lynch, New York City, argued for plaintiff-appellant. With him on the brief was Alfred H. Hemingway, Jr.

John K. Roedel, Jr., Senniger, Powers, Leavitt & Roedel, St. Louis, Mo., argued for defendants/cross-appellants. With him on the brief was Edward J. Héjlek.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

MARKEY, Chief Judge.

Appeal and cross-appeal from a judgment of the United States District Court for the Eastern District of Missouri, Eastern Division, 5 USPQ2d 1328 (1987), that Western Litho Plate and Supply Co. (Western)[1] infringed and failed to show invalid U.S. Patent No. 3,181,461 ('461 patent) of Howard A. Fromson (Fromson) and that Fromson was entitled to "royalties at 0.825%" on the infringing products, "sub-

---

1. Bemis Company, Inc., Western's parent, was joined as a defendant in August 1987, because it had agreed to satisfy any judgment against Western. On April 30, 1987, Bemis sold Western's capital stock to Mitsubishi Chemical Industries America, Inc.

Respecting damages, the court arbitrarily selected a "10% standard profit," *id.* at 1333, and hypothesized that a willing licensee would pay one-quarter of the portion of that profit "attributable to the invention." *Id.* at 1333–34. The court then attributed one-third of the profit to Fromson's invention, arriving at a royalty rate of 0.825%. *Id.* at 1334.[2]

## II. ISSUES

Western says: the patent is invalid on numerous grounds; there was no infringement; and this suit is barred by laches.

Fromson says: Western's infringement was willful; this is an exceptional case warranting attorney fees; the district court should have set a beginning date and rate of prejudgment interest; and the damage award is inadequate.

## III. OPINION

### *Introduction*

This is the eighty-fourth case in which the court has been forced, *ad nauseum,* to remind counsel that it is a court of review, i.e., that it will not find the facts *de novo,* that it is not a place for counsel to retry their cases, that its judges do not participate as advocates to fill gaps left by counsel at trial, and that the function of appellant's counsel in relation to the district court's findings is to show that those findings are clearly erroneous or, if correct, cannot support the district court's legal conclusion.

Obviously, a finding not made cannot be reviewed; nor can a naked phrase for which no basis is set forth be deemed a reviewable finding. Nonetheless, the parties here argue strenuously and at length for what they should know is not available on appeal, i.e., original findings. Western, in addition, seeks its fresh set of findings and conclusions in frequent disregard not only of the district court's findings and conclusions, but of the underlying evidentiary support cited by the court.

### A. Western's Cross–Appeal
### *Introduction*

Because, as above indicated, Western's arguments disregard too much of what the district court said and did, a full recitation and refutation of each of those arguments would serve no useful purpose and would unduly lengthen this opinion. We detain the reader only long enough to indicate that we have carefully considered each of Western's arguments.

### *(1) Validity*

■ Western attacks the determination that it did not carry its burden under 35 U.S.C. § 282 by firing a shotgun at the district court. The charges include: elevating the section 282 presumption to an unsurmountable level; making no independent evaluation of the prior art; "ignoring" Western's new reference; summarily rejecting Western's attack on the reissue proceedings; placing uncritical reliance on "flawed" decisions on the Fromson patent in the PTO and in this court; relying on "nonexistent" evidence of failure of others; equating obviousness with anticipation; unfairly rejecting Western's effort to establish prior invention by Western and six others as invalidating under either 35 U.S.C. § 102 or 35 U.S.C. § 103; and failing to find that Western reduced to practice and tested certain plates before Fromson's filing date.

Western's difficulty is that the district court did not do what Western says it did. On the contrary, the district court: properly applied the presumption; made a complete, independent evaluation of each piece of prior art, individually and collectively; expressly treated Western's new reference; gave proper deference to the reissue proceeding and had good cause to reject Western's attack on that proceeding;[3] expressly

---

**2.** Though neither party referred to the mathematical error, one-third of one-fourth (or one-fourth of one-third) of 10% is 0.833%. The court did not specify in the judgment the item or figure to which the royalty rate was to be applied; i.e., percent of what? (price? gross sales revenue on all infringing plates? net revenue? gross profits? net profits?).

**3.** The district court described that proceeding, listing Western and three other protesting companies, stating that 52 U.S. patents, 15 foreign patents, and 17 literature references were con-

stated it was not bound by any prior decision; did not equate obviousness with anticipation (Western's basis for this attack is the court's statement responding to Western's assertion of prior invention); properly rejected Western's evidence of "prior invention" by it and others as unsupported and not prior art for any purpose; and, having found Western's evidence "unreliable" and explaining why, the district court properly refused to find that Western made the invention before Fromson did.[4] The district court's determination that Western failed to carry its burden under § 282 must be affirmed.

### (2) Infringement

█ Western interprets Fromson's prosecution history as limiting the claims to plates without graining, and asserts that claim 4 is not infringed because bichromated polyvinyl alcohol materials are not the same as or the equivalent of diazo resin.

That Fromson distinguished his invention from plates that were only grained did not preclude infringement by Western's grained-and-anodized plates, as the district court correctly found. Thus Western's prosecution history argument must be rejected as based on a clear misinterpretation, and the district court's finding of infringement must be affirmed.

As with anticipation of claim 7, *supra* n. 4, Western's assertion regarding claim 4, if it were true, could not affect the outcome. Western has failed, in any event, to show that the district court's finding of infringement of claim 4 is clearly erroneous.[5]

### (3) Laches

█ Western's argument that Fromson had no excuse for delaying his suit simply disregards the court's findings that Fromson had no means of learning of infringement until 1974, 5 USPQ2d at 1333, and that "Fromson established that Western deliberately sought to conceal its process throughout the 1970's." *Id.* Also unmentioned in Western's argument is its own recognition at pretrial conferences that Fromson was engaged in suit with other infringers. Western's effort to obtain from this court an evaluation of evidence different from that of the district court must fail. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently."). The district court recognized that Western *may* have been caused some prejudice in its efforts to prove its own prior invention, but laches is an equitable issue, and in balancing the equities the court found that the delay was not due to any bad faith on Fromson's part and declined to "bar plaintiff's recovery through laches." 5 USPQ2d at 1333. Western has not shown that deci-

---

sidered, and noting that Western's attack on Fromson as misleading or not informing the examiner had been rejected by the Assistant Commissioner for Patents.

4. Western argues at length that "claim 7 is anticipated." As Western admits, the district court said nothing about anticipation or non-anticipation of claim 7. The only apparent reason for burdening this court with the argument lies in Western's effort to reflect adversely on the district court's findings on other issues, for Western does not request a remand for a finding on whether claim 7 is anticipated. And that is well, for Western was found to have infringed all six asserted claims, and a finding on whether one was anticipated would have no effect on the outcome.

Similarly, a definitive finding on commercial success was neither made nor necessary. We nonetheless note that in attributing sales to various factors, the court overlooked Western's election to sell not its grained-only plates but the infringing plates to the newspaper market, and the efforts of numerous companies in protesting reissue, efforts unlikely in relation to an unsuccessful invention or one for which noninfringing substitutes were readily available.

5. The district court's finding of infringement appears under a heading "Conclusions of Law". Though infringement is a factual question, that a finding on that question appears among conclusions of law is of no consequence. *Cf. Perini America, Inc. v. Paper Converting Machine Co.,* 832 F.2d 581, 585, 4 USPQ2d 1621, 1625 (Fed. Cir.1987) (§ 112, last paragraph claim construction analysis under "doctrine of equivalents" heading not reversible error because record reflected construction was proper).

sion to have been in any manner reversible.[6]

### B. Fromson's Appeal
#### (1) Remand

■ The district court's treatment of willfulness, attorney fees, prejudgment interest, and damages requires a regretted remand of those issues. Neither party gave the district court, by motion under Fed.R.Civ.P. 59(e), a chance to clarify or expand its statements on those issues. Had either done so, a remand would have presumably been avoided. *Nickson Indus., Inc. v. Rol Mfg. Co.,* 847 F.2d 795, 801 n. 4, 6 USPQ2d 1878, 1882 n. 4 (Fed.Cir. 1988).

#### (2) Willfulness

■ From the single sentence touching the subject, one cannot say what the finding was on willfulness. The most one can say is that Western's infringement was found willful, but insufficiently willful to warrant treble damages. We are in the dark, however, on whether the court considered Western's infringement sufficiently willful to warrant some other level of increased (e.g., doubled) damages, or whether the court was under a mistaken impression that a willfulness finding and a treble damage award are inseparable. The statute, 35 U.S.C. § 284 (1982), contains no such limitation, but says damages may be increased "up to" three times.[7] Willfulness is a separate finding. *See Kloster Speedsteel A.B. v. Crucible Inc.,* 793 F.2d 1565, 1580, 230 USPQ 81, 91 (Fed.Cir.1986), *reh'g granted, modified in part,* 231

USPQ 160, *cert. denied,* —— U.S. ——, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

■ The district court entered no express findings on whether Western: (1) made an investigation and formed a good faith belief that the patent was either invalid or not infringed; or (2) obtained an opinion of counsel before infringing;[8] or (3) otherwise disregarded its duty of exercising due care. Though the court's finding of willfulness would appear to indicate that its findings on such questions would have been adverse to Western, we can neither make such findings nor attribute our own to the district court. Findings in support of an award or denial of increased damages and attorney fees for willfulness must be made in the first instance by the district court. *See Paper Converting Mach. Co. v. Magnagraphics Corp.,* 745 F.2d 11, 20, 223 USPQ 591, 597–98 (Fed.Cir.1984).

■ Western refused to answer interrogatories on whether it obtained counsel's opinion before it began infringement in 1965 or on the content of any such opinion, saying it would disclose such matters only if it were found liable for infringement at trial, in essence suggesting a separate trial on willfulness, e.g., as part of a separate trial on damages. That approach may be useful in meeting the attorney-client privilege problem. Here, however, willfulness and damages were tried with liability, and Western did not offer an opinion of counsel. Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were

---

**6.** Though not expressly recognized by the district court, Fromson's delay was costly to him. Western had free use of Fromson's invention for eleven years, recovery being limited by 35 U.S.C. § 286 to infringement occurring during the six years prior to suit and the two months ensuing before the patent expired.

**7.** 35 U.S.C. § 284 reads:
Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

**8.** It is apparently undisputed that Western did obtain an opinion of counsel in 1969. If Western began manufacturing before the patent issued in 1965, that fact would not preclude a finding of willfulness. *Pacific Furniture Mfg. Co. v. Preview Furniture Corp.,* 800 F.2d 1111, 1114–15 n. 9, 231 USPQ 67, 69 n. 9 (Fed.Cir. 1986)..

obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention. *See Kloster Speedsteel*, 793 F.2d at 1579–80, 230 USPQ at 90–91.

■ Having found willfulness, the district court erred when it did not say why that fact did not render the case exceptional under 35 U.S.C. § 285 or why it did not warrant an increase in damages. *S.C. Johnson & Sons, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). Accordingly, the willfulness issue must be remanded to enable the district court, after consideration and explication of all the circumstances it deems probative, to exercise its discretion in awarding or denying increased damages. *See Paper Converting Mach. Co.*, 745 F.2d at 20, 223 USPQ at 597–98.

### (3) Attorney Fees

The district court's single sentence on attorney fees, saying only that it did not find the case "appropriate," and making no reference to Section 285, leaves us bereft of the court's reasoning. As above indicated, we cannot know whether the court considered Western's willfulness as a basis for finding this an exceptional case warranting attorney fees under Section 285. *See Del–Mar Avionics v. Quinton Instrument Co.*, 836 F.2d 1320, 1329, 5 USPQ2d 1255, 1262 (Fed.Cir.1987) ("finding of willful infringement is legally sufficient to meet criterion of 'exceptional case.'").[9] Nor do we have the court's views on Fromson's assertions that Western engaged in misconduct during litigation and vexatious litigation.

Notwithstanding the record's silence on the district court's evaluation of this case under Section 285, the parties vigorously argue for and against a finding by this court of an exceptional case and a consequent award of attorney fees; but a finding of "exceptional" is one of fact, *S.C. Johnson & Son, Inc.*, 781 F.2d at 201, 228 USPQ at 369, and must be made in the first instance by the district court.

A district court need follow no prescribed grammatical formulation in expressing its findings and conclusions. *Cf. Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983). Though we review judgments, not opinion language, *Fromson II*, 755 F.2d at 1556, 225 USPQ at 31, we must and do attempt to discern from the district court's opinion or action the bases, albeit unexpressed, for its findings and conclusions. *Id.* Because that discernment cannot be made from the naked "[not] appropriate" phrase in this case, however, the issue of attorney fees under Section 285 must be remanded for an ultimate finding on "exceptional case," accompanied by subsidiary findings reflecting the reasons underlying the district court's exercise of its discretion in awarding or denying attorney fees in light of its findings. *See S.C. Johnson & Son, Inc.*, 781 F.2d at 201, 228 USPQ at 369; *cf. Pretty Punch Shoppettes Inc. v. Hauk*, 844 F.2d 782, 784–85, 6 USPQ2d 1563, 1565 (Fed.Cir. 1988) (vacating denial of preliminary injunction for insufficient findings under Fed.R.Civ.P. 52(a)).

### (4) Prejudgment Interest

Complaining that the district court did not specify a rate or basis for calculating prejudgment interest, Fromson cites record portions supporting what it sees as an appropriate rate and basis. Western complains that the district court made no finding that would "justify" prejudgment interest, and asks this court to reverse the award, laying at Fromson's door the delay from filing of the complaint to trial, again leaving unmentioned the finding that it concealed its use of the claimed process and its own recognition at pretrial conferences that the delay was occasioned by other suits on the same patent.

Western has shown no basis for deeming the award of prejudgment interest an abuse of discretion. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211, 217 USPQ 1185, 1189 (1983) (under 35 U.S.C. § 284, "prejudgment interest shall ordinari-

---

9. Additional authorities are cited in *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed.Cir. 1988).

ly be awarded absent some justification for withholding such an award"); *Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967, 1 USPQ2d 1191, 1193 (Fed.Cir.1986) (same); *cert. denied,* —— U.S. ——, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987). We therefore affirm that award, but remand to enable the district court to determine the rate of interest, the date it begins, whether it shall be simple or compounded, and such other parameters as the court may deem appropriate.

### (5) Damages

### (a) Criterion

The statute, 35 U.S.C. § 284, mandates that damages shall be "adequate to compensate" the patent owner for the infringement. That requirement parallels the criterion long applicable in other fields of law. As the Supreme Court said in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (quoting *Wicker v. Hoppock,* 73 U.S. (6 Wall) 94, 99, 18 L.Ed. 752 (1867)):

> The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

In applying that general rule in a patent case, the Court said, "Congress sought to ensure that the patent owner would in fact receive full compensation for 'any damages' he suffered as a result of the infringement." *Devex,* 461 U.S. at 654–55, 103 S.Ct. at 2062, 217 USPQ at 1188.

 The patent owner bears the burden of proof on damages. When the evidence is inadequate to establish actual or nearly actual damages, a court may under Section 284 employ a "reasonable royalty" as the floor below which a damage award may not fall.[10] *Del–Mar Avionics,*

*Inc.,* 836 F.2d at 1326, 5 USPQ2d at 1260. As used in Section 284, "reasonable royalty" is handy shorthand for damages. As the statute provides, the royalty is "for the use made of the invention by the infringer." Thus the calculation is not a mere academic exercise in setting some percentage figure as a "royalty." The determination remains one of *damages* to the injured party.

### (b) Methodology

Determining a fair and reasonable royalty is often, as it was here, a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge. Lacking adequate evidence of an established royalty, the court was left with the judge-created methodology described as "hypothetical negotiations between willing licensor and willing licensee."

Historically, the methodology has been problematic as a mechanism for doing justice to individual, non-manufacturing patentees. Because courts routinely denied injunctions to such patentees, infringers could perceive nothing to fear but the possibility of a compulsory license at a reasonable royalty, resulting in some quarters in a lowered respect for the rights of such patentees and a failure to recognize the innovation-encouraging social purpose of the patent system.

Thus a cold, "bottom line" logic would dictate to some a total disregard of the individual inventor's patent because: (1) ill-financed, he probably would not sue; (2) cost of counsel's opinion could await suit; (3) the patent may well be held invalid on one of many possible bases; (4) infringement may not be proven; (5) if the case be lost, a license can be compelled, probably at the same royalty that would have been paid if the patentee's rights had been respected at the outset. Though the methodology must on occasion be used for want of a better, it must be carefully applied to achieve a truly reasonable royalty, for the

---

**10.** Though Fromson acquired the capacity to manufacture plates and competed with Western for a short period near the end of the patent's life, the parties and the court apparently agreed that damages were to be set by use of a reasonable royalty formulation, not on the basis of any profits lost by Fromson. Nor was there an effort to set a reasonable royalty for one period of infringement and to employ lost profits for a later period of infringement. *See TWM Mfg. Co., Inc. v. Dura Corp.,* 789 F.2d 895 (Fed.Cir. 1986).

methodology risks creation of the perception that blatant, blind appropriation of inventions patented by individual, nonmanufacturing inventors is the profitable, can't-lose course.[11]

The patent system encourages inventors to invent and disclose. Corporations don't invent; people do. Yet, the patent system also encourages corporations and investors to risk investment in research, development, and marketing without which the public could not gain the full benefit of the patent system. The right to exclude conferred by a valid patent thus deserves the same respect when that right is in the hands of an individual as when it is in the hands of a corporation. In applying the methodology, emphasis on an individual inventor's lack of money and manufacturing capacity can tend to distinguish the respect due the patent rights of impecunious individual inventors from that due the patent rights of well-funded, well-lawyered, large manufacturing corporations. Any such distinction should be rejected as the disservice it is to the public interest in technological advancement. That "survival of the fittest" jungle mentality was intended to be replaced, not served, by the law.

Like all methodologies based on a hypothetical, there will be an element of uncertainty; yet, a court is not at liberty, in conducting the methodology, to abandon entirely the statutory standard of damages "adequate to compensate" for the infringement. The royalty arrived at must be "reasonable" under all the circumstances; i.e., it must be at least a close approximation of what would be "adequate to compensate" for the "use made of the invention by the infringer." 35 U.S.C. § 284.

The methodology encompasses fantasy and flexibility; fantasy because it requires a court to imagine what warring parties would have agreed to as willing negotiators; flexibility because it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.[12]

As has been said by the Supreme Court:
At times the only evidence available may be that supplied by testimony of experts as to the state of the art, the character of the improvement, and the probable increase of efficiency or savings of expense.... This will generally be the case if the trial follows quickly after the issue of the patent. But a different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within....

... To correct uncertain prophecies in such circumstances is not to charge the offender with elements of value non-existent at the time of his offense. It is to bring out and expose to light the elements of value that were there from the beginning.

... An imaginary bid by an imaginary buyer, acting upon the information available at the moment of the breach, is not the limit of recovery where the subject of the bargain is an undeveloped patent.

**11.** Courts have on occasion recognized the need to distinguish between royalties payable by infringers and non-infringers. *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1158, 197 USPQ 726, 731 (6th Cir.1978), *quoted in Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1563, 219 USPQ 377, 387 (Fed.Cir.1983); *see Bott v. Four Star Corp.,* 229 USPQ 241, 247–48 (E.D. Mich.1985) (5% royalty though established industry rate was 3%), *aff'd in part, rev'd in part on other grounds,* 807 F.2d 1567, 1 USPQ2d 1210 (Fed.Cir.1986).

**12.** A further fantasy element present in use of the methodology in this case is the limited period for which damages are recoverable. Having sued on March 11, 1982, two months before the patent expired on May 4, 1982, Fromson may recover damages for the period March 11, 1976 to May 4, 1982. Had Western been a "willing licensee" on May 4, 1965, and agreed then to pay a royalty for use of Fromson's invention free of suit, it would have paid that royalty on all sales of all infringing plates over the seventeen-year life of the patent. As matters now stand, Western is assured of royalty-free use of the invention for the first eleven years of the patent's life.

Information at such a time might be so scanty and imperfect that the offer would be nominal. The promisee of the patent has less than fair compensation if the criterion of value is the price that he would have received if he had disposed of it at once, irrespective of the value that would have uncovered if he had kept it as his own. Formulas of measurement declared *alio intuitu* may be misleading if wrested from their setting and applied to new conditions.

*Sinclair Ref. Co. v. Jenkins Petroleum Co.*, 289 U.S. 689, 698–99, 53 S.Ct. 736, 739, 77 L.Ed. 1449, 17 USPQ 522, 525–26 (1933) (citations omitted); *accord Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1556–58, 224 USPQ 259, 268–70 (Fed.Cir.1984) (court found error in excluding evidence of infringer's actual profits, but gave no opinion on weight to be given that evidence).[13]

Forced to erect a hypothetical, it is easy to forget a basic reality—a license is fundamentally an agreement by the patent owner not to sue the licensee. In a normal negotiation, the potential licensee has three basic choices: forego all use of the invention; pay an agreed royalty; infringe the patent and risk litigation. The methodology presumes that the licensee has made the second choice, when in fact it made the third. Thus Western must be viewed as negotiating for the right to exclude competitors or to compete only with licensed competitors, a landscape far different from that created, post May 1965, by the infringement of Western and others.

Whatever royalty may result from employment of the methodology, the law is not without means for recognizing that an infringer is unlike a true "willing" licensee; nor is the law without means for placing the injured patentee "in the situation he would have occupied if the wrong had not been committed." *Albemarle Paper Co.*, 422 U.S. at 418–19, 95 S.Ct. at 2372. Increased damages under § 284 for willfulness is one such means. *See Great N. Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 167, 228 USPQ 356, 360 (Fed.Cir.1986). Attorney fees in "exceptional" cases under § 285 is another. S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S.Code Cong.Serv. 1386, 1387, *quoted in Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 472, 227 USPQ 368, 372 (Fed. Cir.1985) ("The discretion given the court [to award reasonable attorney fees], in addition to the present discretion to award triple damages, will discourage infringement by anyone thinking that all he would be required to pay if he loses the suit would be a royalty.") Prejudgment interest is a third such means. *Devex*, 461 U.S. at 654–55, 103 S.Ct. at 2061–62, 217 USPQ at 1188–89.[14]

### (c) Reasonable Royalty

Fromson challenges the 0.825% rate as "unreasonable." Western, not surprisingly, says the 0.825% rate is perfectly reasonable. Though it is probably safe to say that almost any licensee would be willing to pay less than one cent on each dollar of profit, or one-twelfth of a 10% profit, the question at hand is whether the royalty here is reasonable.

Assessing and computing damages under 35 U.S.C. § 284 is a matter within the sound discretion of the district court. *Yarway Corp. v. Eur–Control USA, Inc.*, 775 F.2d 268, 275, 227 USPQ 352, 357 (Fed. Cir.1985); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863, 226 USPQ 402, 409 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). Fromson, as appellant, has the burden of convincing this court that the district court abused its discretion. *Seattle Box Co. v.*

---

**13.** In *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079–81, 219 USPQ 679, 683–84 (Fed. Cir.1983), and in *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557, 229 USPQ 431, 433 (Fed.Cir.1986), a reasonable royalty was determined without reference to events following initial infringement. The infringers, in an effort to reduce that royalty, submitted evidence of low use and low profits. That evidence was admitted but was given little or no weight.

**14.** Fromson says a "reasonable royalty" (by which he means a "willingly bargained" royalty) gives him "nothing for the infringement." He suggests an "add on" amount to whatever is finally determined to be a bargained royalty. The district court did not mention Fromson's request for an "add on." A determination on remand of a royalty "adequate to compensate for the infringement", *see* 35 U.S.C. § 284, will render Fromson's request moot.

*Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed. Cir.1985); *Paper Converting*, 745 F.2d at 21, 223 USPQ at 598. Abuse of discretion may be established by showing that the district court's decision was based on an error of law or on clearly erroneous fact findings, or that the district court made a clear error of judgment. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1567, 6 USPQ2d 1010, 1013 (Fed. Cir.1988).

■ In their arguments before us, the parties emphasize either the May 1965 date of first infringement or selected later events, depending on which they see as best serving their interests. Fromson points to testimony and documents indicating high profit margins, anticipated and actual. Fromson also argues, without contradiction, that there was no acceptable noninfringing alternative product, and that his invention became the "industry standard," citing the testimony of Western's former president that Western, if it could not use Fromson's invention, would have had to "get out of the market." Western points to testimony indicating low profits and devotes virtually the entirety of its argument to Fromson's poor bargaining position in 1965, emphasizing his lack of money and manufacturing capacity.[15] The district court, as we shall see, began with "the time the patent issued" and moved promptly to consideration of certain later events. In so doing, the court did not indicate its reasons for disregarding the testimony and documents indicating Western's predictions of high profits and prices or for resolving the direct conflict in testimony of a single witness (Western's president Harrell) on profits.

The district court's discussion of damages, in its entirety, reads:

In arriving at an appropriate rate of assessment of damages, the Court is di-

rected to hypothesize a negotiation between a willing licensor and licensee at the time the patent issued. *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 898–99 (Fed.Cir.1986). In 1965 the metro newspaper market for lithographic plates had not been created. Defendant's witness Harvell [*sic*, Harrell] testified that profits on lithographic plates were low as a result of low sales volume, and it could not have been anticipated at that time that they would increase significantly in the future. Evidence at trial indicated that plate profits have remained low in the intervening twenty years. The Court will therefore apply a standard profit of 10% for lithographic plate products. The Court finds that a willing licensee would be willing to pay a royalty of one quarter of its profits on its product attributable to the patented invention. In this case, the evidence showed that the infringing plates produced by Western, which were electrolytically grained prior to anodization, had run-lengths of 125,000 and 200,-000 impressions as contrasted with an anticipated run-length of 25,000 to 50,000 impressions on the Fromson plate. If profits are to be measured for sales to an industry that valued durability and run-length over all plate characteristics, which is an appropriate measure since the metro newspaper market accounted for the bulk of sales of Fromson-type plates, one-third of the profits may reasonably be attributed to the Fromson invention. This Court therefore concludes that Fromson is entitled to 2.5% of the one-third of Western's profits attributable to the patented invention, which yields a royalty of 0.825%, subject to a prejudgment interest.[16]

5 USPQ2d at 1333–44.

A fundamental error of judgment occurred when the district court attributed "one-third of the profits" to the invention.

---

**15.** In determining the true measure of a reasonable royalty, a court should not select a "diminished royalty rate" a patentee may have been forced to accept "by the disrepute of his patent and the open defiance of his rights." *General Motors Corp. v. Dailey*, 93 F.2d 938, 941–42, 36 USPQ 520, 523 (6th Cir.1937).

**16.** Fromson complains that the district court considered only what a *licensee* would have been willing to pay, saying nothing of what he, as *licensor*, would have been willing to accept, and that his right to exploit his patent rights free of misappropriation by Western was given no weight. Fromson does not point to evidence of a particular royalty rate he would have de-

First, and assuming for the moment the relevancy of "run lengths," the court held that "infringing plates produced by Western" had run lengths of 200,000 impressions. Royalties are paid and payable on the use made of the invention, i.e., on *infringing* products and *infringing uses* of the claimed process. The reference to 25/50,000 anticipated runs of "the Fromson plate" is understandable only as an erroneous acceptance of Western's misconstruction of the claims as limited to anodized-only, non-grained plates. (At another point, the court said, "An *un*grained anodized and silicated plate has a run length between 25,000 and 50,000 impressions.") (Emphasis the court's.) Second, the claimed plate is not formed of separable parts, but is a unitary product, an entirety, produced and sold as such. There is no evidence that Western sold, or that customers in the newspaper market would buy, grained-only plates. There is thus no structural or other basis for distinguishing one-third of the infringing products sold. Third, Western's infringement encompassed use of the claimed *process*, whatever may have been the product resulting from that use.[17]

Western relies heavily and improperly on *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970) and its reference to "the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements." *Id.* at 1120. That language occurs in the court's introductory list of factors that had been considered in *other cases.* Cases should not be cited for mere words. What counts is what the court did in a cited case. In *Georgia Pacific*, the court expressly *refused* apportionment, pointing out that the invention in that case (a striated plywood sheet) was,

like the present invention, an "entirety." *Id.* at 1132. The infringer there argued, unsuccessfully, that the infringing sheets were grooved (per earlier patents), just as Western argues here that the infringing plates were grained per earlier practice. The case thus supports Fromson, not Western, and illustrates the abuse of discretion in ordering apportionment here.

A conclusion that apportionment was error does not leave us free to affirm 2.5% of 10% as a reasonable royalty. One, the calculation should be that of the district court in the first instance. Two, we cannot fathom either the rationale that led to selection of a "standard 10% profit" or the basis for employing a percentage of a percentage. If a district court elects to consider the infringer's profit, *see Trans–World Mfg. Corp. v. Nyman & Sons, Inc.*, 750 F.2d 1552, 1568, 224 USPQ 259, 269–70 (Fed.Cir.1984), it would appear sufficient to fix a reasonable royalty as a percentage of the dollar amount of profit made by the infringer from its use of the invention, whatever that dollar amount may have from time to time been.[18] Three, the district court did not say whether the royalty rate should be applied to gross or net profit.

Thus the damages issue must be remanded for recalculation of a reasonable royalty. Taking into account all the particular operative facts and individual circumstances, the district court on remand is, of course, at liberty to craft a royalty on such bases as it may deem most fair. The royalty may, for example, be measured as a percentage of Western's gross or net profit dollars, or as a set amount per infringing plate sold, or as a percentage of the gross or net price received for each infringing plate. The district court may rely on the

---

manded in 1965, but cites evidence of his efforts to exploit his patent in 1965 by sales of materials to plate manufacturers.

17. The district court noted that Western did much to develop the newspaper market, to which it also sold chemicals, processing equipment, training and general promotional services. Important here, however, is Western's use of Fromson's invention (instead of grained-only plates it was free to sell without infringement or payment of any kind) in meeting the demands

of that market. Fromson has not demanded compensation for the sale of collateral products. *See Deere & Co. v. International Harvester Co.*, 710 F.2d 1551, 1558–59, 218 USPQ 481, 487 (Fed.Cir.1983).

18. Indeed, employment of the methodology in a proper case may result in a royalty that exceeds the infringer's profit. *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557, 229 USPQ 431, 433 (Fed.Cir.1986).

present record if deemed adequate, or may elect to receive expert testimony on "what royalty would be reasonable under the circumstances." 35 U.S.C. § 284.

CONCLUSION

That part of the judgment entered in favor of Fromson is affirmed.

That part of the judgment providing for an 0.825% royalty is vacated.

The case is remanded for determination, with appropriate findings and conclusions, on whether Fromson is entitled to increased damages under 35 U.S.C. § 284, and to attorney fees under 35 U.S.C. § 285, and for recalculation of a reasonable royalty.

*Costs*

As the prevailing party, Fromson is entitled to his costs on appeal.

AFFIRMED–IN–PART, VACATED–IN–PART, REMANDED.