C.R. BARD, INC. and Davol, Inc., Plaintiffs,

v.

**UNITED STATES SURGICAL CORPORATION, Defendant.**

**No. CIV.A.99–286–KAJ.**

United States District Court, D. Delaware.

April 16, 2003.

See also 107 F.Supp.2d 489.

Jack B. Blumenfeld, Maryellen Noreika, Morris, Nichols, Arsht & Tunnel, Wilming-ton, DE, Foley, Hoag & Eliot LLP, Boston, MA (Peter B. Ellis, Claire Laporte, Sarah Cooleybeck, John Nilsson, of counsel) for plaintiffs.

Andre G. Bouchard, Joel Friedlander, Bouchard Margules & Friedlander, Wilmington, DE, Chadbourne & Parke LLP, New York, NY (Eric J. Lobenfeld, Drew M. Wintringham, Michael R. Graif, of counsel), for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. INTRODUCTION AND BACKGROUND

Currently before the Court are a motion for judgment as a matter of law ("JMOL") and for a new trial (Docket Item ["D.I."] 157) filed by defendant United States Surgical Corporation ("U.S.Surgical"), as well as a motion by plaintiffs C.R. Bard, Inc. and its wholly owned subsidiary, Davol, Inc. (collectively "Bard"), for a permanent injunction, enhanced damages, partial attorneys' fees, and post-verdict damages (D.I.163). These motions arise out of a patent infringement lawsuit filed by Bard and in which U.S. Surgical was alleged to have infringed claims 20 and 21 of U.S. Patent No. 5,356,432 ("the '432 patent"), assigned to C.R. Bard, Inc.

The '432 patent is entitled "Implantable Mesh Prosthesis and Method for Repairing Muscle or Tissue Wall Defects." Claim 20 of the '432 patent is an apparatus claim while claim 21 is a method claim. The device manufactured by Bard pursuant to the '432 patent is called the "PerFix" plug. Claim 21 covers a procedure for using the PerFix plug to surgically repair hernias.[1] U.S. Surgical also competes in the market for the surgical repair of hernias with its product called the "Her-

---

1. "A hernia is a relaxation or weakening of the muscle wall, usually in the lower abdomen, which permits tissue to protrude through the muscle wall defect." (D.I. 100 at 2.)

nia–Mate". The Hernia–Mate is physically similar to the PerFix plug and is also used by surgeons to repair hernias. Before trial, the Court held that the Hernia–Mate did not infringe claim 20, the apparatus claim, of the '432 patent. (D.I. 106; D.I. 107.) The only issue of infringement at trial, therefore, was whether U.S. Surgical induced surgeons to infringe claim 21 of the '432 patent, the method claim relating to hernia repairs. After a six day jury trial, commencing on October 27, 2000, the jury, on November 3, 2000, found that U.S. Surgical actively and willfully induced infringement of claim 21 of the '432 patent. (D.I.146.) Damages were awarded in the amount of $702,322. (*Id.*)

## II. LEGAL PRINCIPLES

### A. *JMOL and New Trial*

#### 1. *JMOL*

Rule 50(a) of the Federal Rules of Civil Procedure empowers a court during trial to rule against a party as a matter of law after the moving party is fully heard on an issue, if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993) (citation omitted). If the court denies a motion for JMOL during trial, a party may renew the motion within ten days of entry of judgment in the case. FED. R. CIV. P. 50(b). To prevail on a renewed motion for JMOL following a jury trial, a party " 'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.' " *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir.1998) (quoting *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.Cir.1984)). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a

reasonable mind as adequate to support the finding under review." *Perkin–Elmer Corp.*, 732 F.2d at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *See id.; Richardson–Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed.Cir.1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *See Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed.Cir.1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin–Elmer Corp.*, 732 F.2d at 893.

#### 2. *New Trial*

Within ten days of entry of judgment, a party may, in addition to renewing a motion for JMOL, move the court for a new trial under Rule 59 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 59(b). The court may grant a new trial under Rule 59 "for any of the reasons for which new trails have heretofore been granted in actions of law in the courts of the United States." FED. R. CIV. P. 59(a). However, a court should grant a new trial in a jury case only if "the verdict was against the weight of the evidence ... [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991).

### B. *Permanent Injunction, Enhanced Damages, and Attorneys Fees*

#### 1. *Permanent Injunction*

A district court is vested with broad equitable power "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (2003). A district

court thus has the power "to grant preliminary injunctions pending trial, as well as permanent injunctions after a full determination on the merits[ ]" in patent infringement actions. *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed.Cir.1995). The purpose of such injunctions is to preserve the legal interests of the patent owner in the right to exclude others from making, using, selling, or offering to sell the patented invention. *See Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed.Cir.1994) (injunctive relief preserves a patentee's right to be free from infringement); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577–78 (Fed.Cir.1983) (without the right to exclude, the incentive to patent is diminished). In framing injunctive relief, district courts are given wide latitude. *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1527 (Fed.Cir.1985). However, Rule 65(d) of the Federal Rules of Civil Procedure requires an injunction to set forth the reasons for its issuance, be specific in its terms, and describe with reasonable detail the act or acts to be restrained.

### 2. *Enhanced Damages*

■ A district court, pursuant to 35 U.S.C. § 284, may enhance damages awarded a claimant in a patent infringement action "up to three time the amount found or assessed." One purpose of such an award is punishment for the willful infringement of a patent by an infringer. *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1566 (Fed.Cir.1988). The award is equitable in nature. *S.C. Johnson & Son v. Carter–Wallace, Inc.*, 781 F.2d 198, 201–02 (Fed.Cir.1986). A district court is thus not bound to increase damages in all cases of willful infringement. *Id.* Instead, the court is required only to place a claimant in the position that the claimant would have occupied if no infringement had occurred. *Fromson v. Western Litho Plate & Supply Co.*, 853

F.2d 1568, 1574 (Fed.Cir.1988) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983)).

### 3. *Attorneys' Fees*

■ In a similar vein, a district court may award attorneys' fees in a patent infringement action. 35 U.S.C. § 285 (2003). Such an award is not limited to the patent owner but extends to the "prevailing party" in the lawsuit. *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927, 933–34 (Fed.Cir.1994) (awarding attorneys' fees to a non-patent owner in a breach of contract action arising under the patent laws). To receive attorneys' fees, however, the party must demonstrate that the case is exceptional and warrants such an award. *E.g., Beckman Instr., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed.Cir.1989). Even in an exceptional case, however, the court is not bound to award attorneys' fees. *See S.C. Johnson & Son*, 781 F.2d at 201. "Many factors could affect this result[ ] ... such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burden of litigation as between winner and loser." *Id.* When willful infringement is found, however, a court should explain a denial of attorneys' fees. *See id.* at 200–02 (vacating and remanding for clarification of a portion of district court's judgment denying attorneys' fees in a case of willful infringement). Indeed, "[d]istrict courts have tended to award attorney fees when willful infringement has been proven, and ... [the Federal Circuit] has uniformly upheld such awards." *Id.* at 200.

## III. DISCUSSION

### A. *U.S. Surgical's Motion*

#### 1. *The Parties' Positions on JMOL*

Five separate grounds for JMOL are raised in U.S. Surgical's brief: (1) active

inducement of infringement was not established, (2) the asserted invention was obvious, (3) willfulness was not proven, (4) the jury's damages award was excessive, (5) the invention was on-sale before the critical date. (D.I. 161 at 16–38.)

■ As to its first contention, U.S. Surgical asserts that the evidence did not prove active inducement of infringement because the Hernia–Mate is a "staple article" of commerce, because Bard failed to introduce legally sufficient evidence of intent to induce, because Bard failed to introduce legally sufficient evidence that the Hernia–Mate's petals can be detached to vary the stiffness of the plug as required by claim 21 of the '432 patent, and because Bard failed to introduce legally sufficient evidence that the Hernia–Mate approximates the shape of the defect as required by claim 21 of the '432 patent. (*Id.* at 16–30.) U.S. Surgical further contends that the '432 patent was obvious since "Bard does not have a patent on petals or a plug with petals . . . ." (*Id.* at 31.) Next, U.S. Surgical argues that it insulated itself from a claim of willfulness by obtaining an opinion of counsel and attempting to "invent around" the patent. (*Id.* at 31–34.) Thus, concludes U.S. Surgical, the jury's verdict could not have been founded upon clear and convincing evidence. (*Id.*) With regard to damages, U.S. Surgical maintains that the award cannot stand since Bard failed to meet its burden of demonstrating lost profits. (*Id.* at 34–36.) Finally, U.S.

Surgical asserts that the jury's verdict cannot stand since Bard was not entitled to a patent, having placed the invention of claim 21 of the '432 patent on sale before the critical date. (*Id.* at 38.) [2]

Bard challenges each of the aforementioned arguments by U.S. Surgical, first noting that many of the allegations were not raised before the jury's verdict and, therefore, are not properly before the Court. (D.I. 168 at 10–12.) Bard next asserts that U.S. Surgical's "staple article" argument was correctly rejected by the Court because it is not applicable in the context of active inducement of infringement under 35 U.S.C. § 271(b). (*Id.* at 12–16.) Moreover, Bard maintains, there existed "abundant evidence to support a finding of active inducement within the legal parameters of that doctrine." (*Id.* at 16.) Bard contends that there is no reason to revisit the on sale question since it has already been fully briefed and decided by the Court in Bard's favor. (*Id.* at 19.) Bard concludes its argument by arguing, in the alternative and in the event the Court does not adopt its argument as to pre-verdict issues, that no reason presented by U.S. Surgical justifies the JMOL request. (*Id.* at 19–40.)

### 2. *The Parties' Position on New Trial*

U.S. Surgical's primary argument for a new trial centers on Bard's presentation of evidence of "copying" during the course of trial. (D.I. 161 at 9–16.) U.S. Surgical

---

**2.** U.S. Surgical also argued that it is entitled to JMOL or a new trial because the jury's finding of infringement of claim 21 of the '432 patent, a method claim, and subsequent award of damages amounts to a grant of patent protection on an apparatus like the one claimed in claim 20 of the '432 patent, which the Court found was not infringed by the Hernia–Mate. (D.I. 161 at 36–37.) This argument, however, is untenable because each claim of a patent defines a separate invention. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed.Cir.

1984) (citations omitted). A patentee is entitled, therefore, to protection against infringement of each claim of a patent. *Cf. Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561 (Fed.Cir.1987) (the sole effect of the patent grant is to exclude others for a limited period of time from the claimed invention). U.S. Surgical has not persuaded the Court that honoring the verdict of infringement as to the method claim provides Bard with anything more than that to which the law entitles it.

asserts that since "copying" was not a proper issue for trial, the introduction of and discussion of evidence relating to U.S. Surgical's alleged "copying" of Bard's Per-Fix plug prejudicially impacted the jury's verdict, thus, making a new trial warranted. (*Id.*) In addition, U.S. Surgical contends that each argument that supports its motion for JMOL also supports its motion for a new trial. (*Id.* at 16–39.) Bard counters U.S. Surgical's "copying" argument by pointing out that the issue of copying went beyond the issue of infringement of claim 20 and impacted other issue properly before the Court, such as willfulness. (D.I. 168 at 2–40.)

### 3. *The Court's Decision*

■ The Court holds that U.S. Surgical's arguments for JMOL or a new trial are not well founded. U.S. Surgical asserts that it is entitled to a new trial because evidence and discussion of the issue of "copying" prejudiced its case and improperly influenced the jury since the apparatus claim as to which the copying issue was pertinent had been dismissed from the case. (D.I. 106; D.I. 107.) But, as Bard points out, the issue of copying extended well beyond infringement of the apparatus claim and was relevant to other issues in the case, such as willful infringement of the method claim of the '432 patent. That fact was recognized by the Court then (*see, e.g.,* D.I. 128 at 62, 65;

D.I. 135 at 24; D.I. 148–156 at 1091) and, it is reaffirmed now.

■ Similarly, none of the five distinct arguments U.S. Surgical has made for JMOL justify overturning the jury's verdict and, in fact, several of those arguments may not be properly before the Court because the issues were not raised in U.S. Surgical's original motion.[3] *See, e.g., Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 89 F.3d 976, 992–93 (3d Cir.1996) (post-verdict JMOL motion improper where moving party failed to raise argument in pre-verdict JMOL motion); *Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 387 (Fed.Cir.1984) (describing the same rule as settled law); FED. R. CIV. P. 50, Advisory Committee Note ("A post-trial motion can be granted only on grounds advanced in the pre-verdict motion."). Assuming that each argument is properly raised, the record of this case does not justify the relief U.S. Surgical requests. The jury had ample evidence from which to find that surgeons directly infringed claim 21 of the '432 patent, that U.S. Surgical actively induced such infringement, and that the Hernia–Mate approximates the shape of muscle wall defects, as is required by claim 21. (*See, e.g.,* D.I. 148–156 at 442, 448–50, 453, 497, 498, 507, 511, 521, 525, 749–50, 773–74, 866, 868, 869, 912–13, 962, 1199, 1217–18, 1233–34.) Moreover, the jury also had sufficient evidence to find that U.S. Surgical failed to

---

**3.** On November 1, 2000, U.S. Surgical raised the following two arguments under Rule 50 of the Federal Rules of Civil Procedure:

1. The invention of Claim 21 of U.S. Patent No. 5,356,432 ("the '432 Patent") (I) was the subject of a commercial sale, and (ii) was ready for patenting, more than one year prior to the date of the application for patent in the United States. Accordingly, Claim 21 is invalid under the on-sale statutory bar of 35 U.S.C. § 102(b).

2. Because mere sale of a "staple article" is not actionable under the Patent Act, Bard

has failed to establish that U.S. Surgical actively induced surgeons to infringe method Claim 21.

(D.I. 140 at 1.) U.S. Surgical argues, however, that the Court's intent, as deduced from a statement made in the record, was to reserve judgment on all JMOL issues until the conclusion of trial. (D.I. 170 at 7–8.) Assuming for the sake of argument that that is true, the Court has considered each of U.S. Surgical's arguments for JMOL.

demonstrate that claim 21 was obvious in view of the prior art, that U.S. Surgical acted willfully, and that Bard was entitled to lost profits. (*See, e.g., id.* at 149, 465–67, 1123, 1426–28, 1430.)

■■■ As to the "staple article" argument, the Court notes that the verdict at trial was that U.S. Surgical had actively induced infringement of the patent. There existed sufficient evidence for the jury to find as it did. (*See, e.g.,* D.I. 148–156 at 455, 457, 496, 505–06, 850–51, 869–70, 895–96, 1232, 1378, 1423.) Further, the "staple article" issue, as the Court observed at trial (D.I. 148–156 at 1099–1100, 1316), is more appropriately viewed as a matter of contributory infringement. As to U.S. Surgical's assertion that the patent is invalid because the invention was on sale more than a year before the priority date of the patent application, the Court declines to address this matter again post-trial, since it was decided conclusively before the verdict. (*See* D.I. 161 at 38; D.I. 148–156 at 1314.)

For the foregoing reasons, U.S. Surgical's motion for judgment as a matter of law and for a new trial (D.I.157) is DENIED.

### B. *Bard's Motion*

#### 1. *The Parties' Positions on the Request for a Permanent Injunction*

Bard argues that the Court should impose a permanent injunction prohibiting U.S. Surgical from selling the Hernia–Mate within the United States. (D.I. 164 at 3–8.) This is so, reasons Bard, because anything short of a complete ban on the domestic sale of the Hernia–Mate would ultimately result in further infringement since the market for the Hernia–Mate consists of individuals trained to use the product in an infringing manner. (*Id.*) Alternatively, Bard asserts that the minimum protection necessary to prevent future infringement would require U.S. Surgical to

instruct customers of the Hernia–Mate that detaching its petals may result in an infringing use of the product. (*Id.* at 14–17.)

U.S. Surgical counters that there is no legal basis for the Court to adopt Bard's injunctive measures because doing so would, in effect, impermissibly extend the scope of Bard's patent protection. (D.I. 166 at 3–12.) According to U.S. Surgical, since the Hernia–Mate, an apparatus, was not found to infringe the apparatus claim of the '432 patent, Bard's proposal would result in an improper injunction that prohibited the sale of a "staple article" of commerce. (*Id.*) Further, argues U.S. Surgical, requiring an instruction to customers of the Hernia–Mate not to use the product in an infringing manner is "a patently absurd notion[ ]" (*id.* at 10) since "there is no wrong that would be prevented by telling surgeons specifically that they are not to use the plug in a way that would infringe Bard's patent." (*Id.*)

#### 2. *The Parties' Position on the Request for Enhanced Damages and Post–Verdict Damages*

Bard maintains that pursuant to 35 U.S.C. § 284 both enhanced damages and post-verdict damages should be levied against U.S. Surgical, given the jury's finding of willful infringement. (D.I. 164 at 17–29, 31–32.) In support, Bard reiterates its trial argument that U.S. Surgical deliberately copied Bard's product and marketing ideas in an effort to cause economic harm to Bard. (*Id.* at 18–23.) Further, contends Bard, U.S. Surgical's blatant willfulness is evidenced by its failure to obtain meaningful and informed legal advice before pursuing the course it undertook. (*Id.* at 23–25.) Bard argues that this case was not a close case of infringement but was made excessively costly and complex due to U.S. Surgical's insistence on making

baseless arguments. (*Id.* at 25–27.) Moreover, Bard argues, the award sought is justifiable in light of U.S. Surgical's size and financial strength and its failure to take meaningful remedial action. (*Id.* at 27–29.) Bard concludes by requesting post-verdict damages, arguing that such damages are necessary to fully compensate it for its losses. (*Id.* at 31–32.)

U.S. Surgical responds by asserting that Bard's request for post-verdict damages is premature because of U.S. Surgical's motion for JMOL and a new trial. (D.I. 166 at 35–36.) With respect to enhanced damages, U.S. Surgical maintains that the facts of this case do not equate with cases in which enhanced damages are typically awarded. (*Id.* at 12–32.) In particular, argues U.S. Surgical, enhanced damages should not be granted since U.S. Surgical reviewed prior art and prototypes and obtained an opinion of counsel before undertaking the activity found to be infringing. (*Id.* at 12–16.) Moreover, U.S. Surgical contends, the following factors mitigate against such an award: U.S. Surgical did not "copy" Bard's PerFix plug, U.S. Surgical operated under a good-faith belief of non-infringement, U.S. Surgical conducted itself appropriately during litigation, U.S. Surgical's size and financial condition do not favor increasing damages, U.S. Surgical had a strong case of non-infringement, U.S. Surgical's alleged period of misconduct was not extensive, U.S. Surgical has taken remedial action, U.S. Surgical did not try to cause Bard economic harm, and U.S. Surgical did not conceal its conduct. (*Id.* at 16–32.)

### 3. *The Parties' Positions on the Request for Attorneys' Fees*

As to attorneys' fees, Bard states that the jury's finding of willfulness renders the case an "exceptional" one warranting the imposition on U.S. Surgical of attorneys' fees and costs incurred by Bard in asserting its rights under the '432 patent. (D.I. 164 at 29–31.) These fees and costs, argues Bard, should be charged against U.S. Surgical from July 28, 2000, the date the Court granted partial summary judgment on claim 20, through the close of the case in this Court. (*Id.*)

U.S. Surgical contests Bard's request for attorneys' fees and costs, arguing that a finding of willfulness, in and of itself, does not mandate the imposition of fees and costs but is only a predicate to such an award. (D.I. 166 at 32–35.) Further, asserts U.S. Surgical, the jury's finding of willfulness is unjustifiable and, in addition, even if the case is considered "exceptional" for other reasons, the facts weigh against a discretionary award of fees and costs by the Court. (*Id.*)

### 4. *The Court's Decision*

■ Given the Court's decision on U.S. Surgical's motion for JMOL and for a new trial (D.I.157), *supra*, the Court awards Bard post-verdict damages to compensate Bard for damages suffered by U.S. Surgical's continued sale of the Hernia–Mate pending the Court's entry of an injunction in this case. *See* 35 U.S.C. § 284 (2003) (the "court shall award the claimant damages adequate to compensate for the infringement"). The parties are instructed to submit, no later than four weeks following issuance of this Memorandum Opinion and its accompanying Order, proposed post-damage calculations.

■ As to attorneys' fees and costs, the Court, in view of the jury's finding of willful infringement finds this case to be "exceptional" and awards attorneys' fees and costs to Bard incurred as a result of litigating the infringement of claim 21 of the '432 patent from July 28, 2000 through April 16, 2003, pursuant to 35 U.S.C. § 285. *See S.C. Johnson & Son*, 781 F.2d at 200 (stating that in a case of willful

infringement courts routinely award attorneys' fees).

 The Court will also double the jury's damages award as a sanction for U.S. Surgical's willful intrusion upon the property rights of Bard. *See Avia Group Int'l, Inc.,* 853 F.2d at 1566 (stating that one purpose of increased damages is to punish willful infringers).

 Lastly, the Court will enter a permanent injunction in this matter requiring U.S. Surgical to provide sufficient instruction to its customers to prevent future infringement of claim 21 of Bard's '432 patent. *See* 35 U.S.C. § 283 (2003) ("to prevent the violation of any right secured by patent, on such terms as the court deems reasonable"). The parties are instructed, therefore, to meet and confer and submit to this Court within four weeks a form of injunction.

## IV. CONCLUSION

For the reasons stated, the Court DENIES U.S. Surgical's motion for JMOL and a new trial (D.I.157) and GRANTS Bard's motion for (1) a permanent injunction, (2) enhanced damages, (3) partial attorneys' fees, and (4) post-verdict damages (D.I.163). An appropriate order will issue.

### *ORDER*

For the reasons set forth in the Court's April 16, 2003 Memorandum Order in this case,

IT IS HEREBY ORDERED that

1. United States Surgical Corporation's motion for judgment as a matter of law and for a new trial (D.I.157) is DENIED;

2. The motion of C.R. Bard, Inc. and Davol, Inc. for a permanent injunction, enhanced damages, partial attorneys' fees, and post-verdict damages (D.I.163) is GRANTED;

3. The parties shall submit to the Court within four weeks their respective positions on the calculation of post-verdict damages; and

4. The parties shall confer and submit to the Court within four weeks a form of permanent injunction or their respective positions on the wording of such an injunction.