CENTURY WRECKER CORPORATION, Plaintiff,

v.

E.R. BUSKE MANUFACTURING COMPANY, INC., E.R. Buske Distributing Company, and E.R. Buske, Defendants.

No. C 95–4050.

United States District Court, N.D. Iowa, Western Division.

Sept. 25, 1995.

Order Granting in Part Motion to Reconsider Sept. 29, 1995.

**1336**

Edmund J. Sease and Daniel J. Cosgrove of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for plaintiff Century Wrecker.

Kent A. Herink and David A. Tank of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa, for defendants.

### ORDER REGARDING MOTIONS IN LIMINE

BENNETT, District Judge.

This matter comes before the court pursuant to three motions in limine on which the court reserved ruling at the pre-trial conference held September 18, 1995. These mo-

tions are the following: (1) plaintiff's September 5, 1995, motion in limine to exclude statements of defendants' expert Yale Kramer concerning the "affordability" of a reasonable royalty (docket no. 125); (2) plaintiff's September 5, 1995, motion in limine regarding prior settlement agreements (docket no. 129); and (3) defendant's motion in limine, filed September 20, 1995, but raised at the September 18, 1995, pre-trial conference, regarding the summary judgment ruling in this matter (docket no. 160). Each of the motions in limine has been resisted, written briefs by both parties have been filed concerning each motion, and the parties offered oral arguments on each motion at the pretrial conference. The court therefore enters the following rulings on the motions in limine *seriatim.*

### A. Testimony On "Affordability"

■ The first of plaintiff's motions in limine considered here seeks to bar defendants' expert Yale Kramer from testifying about what royalty defendants would have been able to "afford" on the ground that such testimony has nothing to do with what royalty is a "reasonable royalty" under 35 U.S.C. § 284. Defendants counter that plaintiff expressly sought financial information concerning defendants' financial condition in order to allow its expert to calculate a "reasonable royalty" and that plaintiff's expert, Wayne Newkirk, expressly relied on the defendants' ability to pay a royalty in determining what royalty is "reasonable" as a damages award. The court finds that the evidence plaintiff seeks to preclude is admissible.

■ First, the court notes that the methodology for determining a "reasonable royalty" is consigned to the district court's discretion and is reviewed only for abuse of that discretion. *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 869 (Fed.Cir.1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 926 F.2d 1161, 1164 (Fed.Cir. 1991); *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1576 (Fed.Cir. 1988). The court abuses its discretion if its methodology is the result of "clearly erroneous factual findings, legal error, or a manifest error of judgment." *Wang Labs.,* 993 F.2d at 869; *Fromson,* 853 F.2d at 1577.

Turning to the entitlement to and the nature of a "reasonable royalty," a patentee is entitled to no less than a "reasonable royalty" on the infringer's sales for which the patentee has been unable to establish entitlement to lost profits. 35 U.S.C. § 284. *Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1554 (Fed.Cir.1995) (in banc), *cert. den.,* — U.S. ——, 116 S.Ct. 184, — L.Ed.2d — (July 24, 1995) (No. 95–136); *Wang Labs.,* 993 F.2d at 870; *Fromson,* 853 F.2d at 1574 ("reasonable royalty" is "the floor below which a damage award may not fall," quoting *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed.Cir. 1987)); *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed.Cir.1983). Courts attempting to establish a reasonable royalty determine that royalty on the basis of a "hypothetical negotiation" between the plaintiff and defendant, which establishes what royalty a willing licensor and willing licensee would have negotiated at the time the infringement began. *Rite–Hite,* 56 F.3d at 1554; *Wang Labs.,* 993 F.2d at 870 ("A reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit,'" quoting *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1568 (Fed.Cir.1984)); *Fromson,* 853 F.2d at 1574; *Hanson,* 718 F.2d at 1078. A reasonable royalty rate need not be supported by the specific figures advanced by the parties. *SmithKline,* 926 F.2d at 1167.

Plaintiff appears to assert that the exclusive list of factors a court may consider in determining a reasonable royalty is that stated in *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir.), *cert. denied,* 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971). However, the court has found no decision describing the *Georgia–Pacific* factors as the exclusive, permissible factors for determining a reasonable royalty.

Furthermore, although the fact that an award is not based on the infringer's profits, *Rite–Hite,* 56 F.3d at 1555; *State Indus., Inc. v. Mor–Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990); *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1563 (Fed.Cir.1983), or that it might be more than an infringer would have preferred to pay, *Rite–Hite,* 56 F.3d at 1555; *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 900 (Fed.Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986), does not make the award unreasonable, the court finds that, upon a number of occasions, courts have admitted evidence of the kind plaintiff seeks to exclude here, although the weight given that evidence may be extremely low. *See, e.g., Smith-Kline,* 926 F.2d at 1168 (reasonable royalty must be based upon the entirety of the evidence, including parties' evidence of their financial conditions and willingness to enter into a license); *Fromson,* 853 F.2d at 1576 & n. 13 (infringer's actual profits relevant, but given little or no weight); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 788 F.2d 1554, 1557 (Fed.Cir.1986) (evidence of infringer's low profitability admissible but given low weight); *Trans–World Mfg.,* 750 F.2d at 1566–69 (court erred in excluding evidence of infringer's actual profits, but appellate court gave no opinion on weight to be given that evidence); *Hanson,* 718 F.2d at 1079–81 (evidence of infringer's low profits admissible but given little weight); *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 1554 and 1558 (Fed.Cir.1983) (financial prospects of infringer with and without infringing product are part of reasonable royalty calculation, as is the "prudent" business entity's "break-even" royalty rate considered in terms of the profitability of both the patentee and the infringer at the time of the infringement, as well as "all known existing economic factors" that would be considered by the parties). The low weight given the evidence of an infringer's ability or willingness to pay a particular royalty figure or the infringer's actual profits results from the fact that an infringer is not, obviously, a willing licensee, nor is the patent holder necessarily a willing licensor. *Rite–Hite,* 56 F.3d at 1554 n. 13; *Fromson,* 853 F.2d at 1575 n. 11. In the case of an infringer, some premium over a royalty that might be paid by a willing licensor may be appropriate, *Fromson,* 853 F.2d at 1575 n. 11 (citing *Stickle v. Heublein,*

*Inc.,* 716 F.2d 1550, 1563 (Fed.Cir.1983); *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1158 (6th Cir.1978); *Bott v. Four Star Corp.,* 229 USPQ 241, 247–48, 1985 WL 6071 (E.D.Mich.1985), although there are other ways for a damage award to penalize a noninnocent, *i.e.,* a willful, infringer. *Fromson,* 853 F.2d at 1576 (citing enhanced damages for "willful" infringement and attorney fees awards for an "exceptional case"). However, it is implicit in the "reasonable royalty" methodology that the infringer would be left with a reasonable profit, although the fact that, as events unfurled after the hypothetical royalty negotiations, the defendant would not actually have made a profit paying the royalty so determined is irrelevant. *Hanson,* 718 F.2d at 1081; *see also Georgia–Pacific,* 318 F.Supp. at 1122 (reasonable royalty leaves infringer a profit margin). Thus, the court finds that evidence of defendants' financial condition, profitability, or ability to pay a particular royalty figure is relevant and admissible, but such evidence may be entitled to very little weight in determining what is a "reasonable royalty."

■ Finally, defendants assert that plaintiff's expert on damages and royalties, Wayne Newkirk, specifically relied upon information concerning defendants' ability to pay a royalty of any given amount in coming to his conclusion about what would be a "reasonable royalty" in this case. Federal Rule of Evidence 705 imposes upon the opposing party the onus of eliciting the bases of an expert witness' opinion on cross-examination. *Fed.R.Evid.* 705; *see also Symbol Technologies, Inc. v. Opticon, Inc.,* 935 F.2d 1569, 1575 (Fed.Cir.1991) ("The responsibility for challenging the factual underpinnings of the [expert's] testimony fell squarely on [the opposing party] during cross-examination," and collecting the following cases as so holding): *Smith v. Ford Motor Co.,* 626 F.2d 784, 793 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981) (" 'the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness [is] squarely on the shoulders of opposing counsel's cross-examination' " (citation omitted); *Bryan v. FMC Corp., John Bean Div.,* 566 F.2d 541, 545 (5th Cir.1978) ("rule 705 shifts to the cross-examiner the burden of eliciting the

bases of an expert witness' opinion"); *United States v. Santarpio,* 560 F.2d 448, 454–55 (1st Cir.), *cert. denied sub nom., Schepici v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977) (under Rule 705, court was entitled to credit expert's conclusion even though expert did not describe and explain the relevance of factors upon which his opinion rested; defendant neither cross-examined on basis for opinion nor attempted to show its inadequacy); *C. Van Der Lely, N.V. v. F. Lli Maschio S.n.c.,* 221 USPQ 34, 41, 1983 WL 62369 (S.D.Ohio 1983) (under Rule 705, "[c]ross-examination [is] proper procedure for the defendant to challenge the accuracy of [the expert's] opinion")). Thus, defendants bear the burden of showing on what basis Wayne Newkirk's testimony stands. *Symbol Technologies,* 935 F.2d at 1575. To the extent that defendants can show Wayne Newkirk relied in any way on information concerning defendants' financial condition or ability to pay a royalty in any amount in reaching his conclusions about a reasonable royalty in this case, defendants are entitled to present that evidence to show in what way it forms an appropriate or inappropriate basis for Wayne Newkirk's calculations.

The court therefore concludes that the first of plaintiff's motions in limine considered here, seeking preclusion of evidence of defendants' ability to afford a particular royalty rate, must be denied.

### B. *Exclusion Of Prior Settlement Agreements*

■ Next, plaintiff has moved in limine to exclude evidence regarding prior settlement agreements it has entered into with other alleged infringers of the patents in question here. Plaintiff asserts that these settlement agreements are inadmissible under *Fed. R.Evid.* 408 to show the amount of its claim, and irrelevant, and thus excludable under *Fed.R.Evid.* 402 and 403, to show an established or reasonable royalty rate, in part because they are the result of compromise rather than arm's-length negotiation, and in part because they post-date the infringement in question here. Defendants contend, to the contrary, that admission of the settlement

agreements here would not violate the language or spirit of *Fed.R.Evid.* 408 in every context, and that such settlement agreements are relevant in this litigation, because they were relied upon by plaintiff's expert, because plaintiff intends to offer the consent decrees to which the settlement agreements apply, and because post-infringement settlements are probative of a reasonable royalty in the present case.

Federal Rule of Evidence 408 provides, in pertinent part, that

> [e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromising negotiations is likewise not admissible.

*Fed.R.Evid.* Plaintiff asserts that prior to enactment of Rule 408, the Supreme Court applied a similar principle to the question of whether settlements with other infringers could be used as a basis for determining damages to a patent owner in the case of infringement then before the court:

> It is clear that payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.

*Rude v. Westcott,* 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888 (1889); *see also Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 1556–57 (Fed.Cir.1983) (third-party license arising from compromise or settlement would be inadmissible in infringement litigation).

However, the court finds that the rule of inadmissibility of settlements with third parties in infringement actions is not absolute. In *Snellman v. Ricoh Co., Ltd.,* 862 F.2d 283 (Fed.Cir.1988), *cert. denied,* 491

U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 707 (1989), the court considered what appeared to be application by the district court of the rule in *Rude* and *Deere & Co.,* which had led the district court to exclude evidence of a settlement between the plaintiff and IBM on the ground that the settlement agreement in question could not be the basis for a damage award in the case then before the court. *Snellman,* 862 F.2d at 289. The appellate court had the following observations and conclusions:

> The district court did not explain why it concluded that "the admission of the IBM–Norfin agreement as a comparable license agreement was probably error," although it stated in subsequently limiting the evidence Norfin could introduce at the retrial on damages that "this settlement agreement cannot be the basis for a damages award in this case." Perhaps the district court was invoking the rule that license agreements which are "an offer to settle a 'claim' (patent infringement) which was then in dispute, both as to validity and amount," may be inadmissible under Fed.R.Evid. 408. *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 1556, 218 USPQ 481, 485 (Fed.Cir.1983).
>
> In this case, however, the Norfin–IBM agreement was not an attempt to resolve the dispute over infringement or to avoid litigation. *See, e.g., Rude v. Westcott,* 130 U.S. 152, 164, 9 S.Ct. 463, 468, 32 L.Ed. 888 (1889) ("The avoidance of the risk and expense of litigation will always be a potential motive for a settlement."). *Rather, the negotiated license would become effective only if the appellate litigation ultimately resulted in IBM's liability. The agreement properly was admitted into evidence, and the jury was justified in considering it in determining a reasonable royalty.*

*Snellman,* 862 F.2d at 289 (emphasis added). Thus, the rule plaintiff advocates here does not apply when the license obtained through a settlement agreement, although negotiated in the context of litigation, is not intended to avoid the risks of litigation or to resolve liability on the claim, but only to resolve the value of the license.

In another decision which considered these and other precedents standing for the rule

that "a royalty, if any, resulting from [settlement of a prior litigation] should not be considered evidence of an 'established' royalty and thus a measure of adequate damages," the Federal Circuit Court of Appeals again looked carefully at the context in which the settlement was reached. *See Studiengesellschaft Kohle, M.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1572 (Fed.Cir.1988) (quoting the rule from *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1164 n. 11 (6th Cir.1978), and also citing *Rude* and *Deere & Co.,* as well as the decision of the Federal Circuit Court of Appeals in *Hanson,* 718 F.2d at 1078–79). The court clarified that the key element making a settlement agreement between the patent holder and a third party inadmissible was that the agreement was reached "under a *threat* of litigation," arose in a situation in which "litigation was threatened or probable," or "was negotiated against a backdrop of continuing litigation and ... infringement." *Dart Indus.,* 862 F.2d at 1572 (emphasis in the original, citing, respectively, *Panduit* and *Rude,* then *Hanson,* then *Deere & Co.).* In light of this emphasis on the context of the settlement, the court then considered the admissibility in the case before it of a settlement between two parties identified as Phillips and Ziegler:

The circumstances of the *Phillips* settlement were obviously much different than the circumstances present in these cases. There was no "threat" of litigation against Phillips in 1974; nor was the *Phillips* settlement negotiated "against a backdrop of continuing litigation" on validity and infringement. The only "threats" Phillips faced were an impending accounting and a permanent injunction which would have forced it to shut down its Adams Terminal plant. *Phillips' overall agreement with Ziegler was more along the lines of a shotgun wedding than a situation where Phillips could impose upon Ziegler to grant a license at an eroded rate.* That is why Judge Wright held that this type of evidence was "distinct" from other types of post-infringement evidence and highly probative of a reasonable royalty: "because both Phillips and Ziegler knew that the next step in the process was the exact type of accounting exercise that is being undertaken in this case." We agree.

*Dart Indus.,* 862 F.2d at 1572 (emphasis added).

The court has therefore examined the settlement agreements in question here to determine the context in which each was entered into, so far as that context appears on the face of each settlement agreement.[1] In each case, the context of the settlement agreement involves actual, continuing litigation between Century Wrecker and the other parties to the settlement agreement, and the factors propelling the parties toward settlement, irrespective of the merits of that litigation, are described to be the continued, substantial expense of such litigation, and, in some cases, the fact that the continued litigation poses an impediment to merger negotiations between Century Wrecker and one or more of the parties. Thus, these settlement agreements are not "shotgun wedding" agreements, reached when liability has been determined and the agreement only spares the parties grueling accounting procedures or arguments, but instead are settlement agreements specifically entered into under the threat of litigation or against the backdrop of continuing litigation, with the intention of avoiding the risks and expenses of that litigation. *Dart Indus.,* 862 F.2d at 1573; *Snellman,* 862 F.2d at 289. Were these the only circumstances involved here, then, the court would find the settlement agreements inadmissible under *Fed.R.Evid.* 408 and the precedents discussed above.[2]

1. Because of concerns about the confidentiality of the settlement agreements in question here (filed under seal), the court will not be more explicit about either the identities of the parties involved or the language of the agreements entered into between those parties and Century.

2. For the same reasons, the court has serious doubts that the plaintiff here could enter into evidence the consent judgments entered in the cases to which the disputed settlement agreements pertain. An attempt by plaintiff to introduce such consent agreements would also seem to run afoul of Rule 408's prohibition on presenting as evidence of liability for or invalidity of or amount of its claims evidence of a compromise of its claims. *Fed.R.Evid.* 408. However, the court is not currently presented with that question and it has not been briefed or argued by the parties. As a further point, if the plaintiff enters the consent judgments into evidence in this case, it is the court's view that the plaintiff may have

However, the fact that the settlement agreements were reached under the threat of litigation or against the backdrop of continuing litigation is not the only circumstance that matters in this case. Defendants have argued, and the court believes that defendants are entitled to show, that the settlement agreements have a relevance that transcends their negotiation against the background of continuing litigation, and that this further relevance of the settlement agreements was injected into this litigation by the plaintiff. Again, as with the "affordability" issue, defendants assert that plaintiff's expert on damages and royalties, Wayne Newkirk, specifically relied upon these settlement agreements in arriving at his calculations of a reasonable royalty in this case. Federal Rule of Evidence 705 imposes upon the opposing party the onus of eliciting the bases of an expert witness' opinion on cross-examination. *Fed.R.Evid.* 705; *see also Symbol Technologies,* 935 F.2d at 1575; *Smith v. Ford Motor Co.,* 626 F.2d at 793; *Bryan,* 566 F.2d at 545; *Santarpio,* 560 F.2d at 454–55; *C. Van Der Lely, N.V.,* 221 USPQ at 41, 1983 WL 62369. Thus, defendants bear the burden of showing on what basis Wayne Newkirk's testimony stands. *Symbol Technologies,* 935 F.2d at 1575. To the extent that defendants can show Wayne Newkirk relied in any way on the settlement agreements in question in reaching his conclusions about a reasonable royalty in this case, defendants are entitled to present those settlement agreements and to show in what way they form an appropriate or inappropriate basis for Wayne Newkirk's calculations.[3]

■ Defendants assert that the settlement agreements might be relevant to other issues not proscribed by Rule 408, *i.e.,* issues other than liability for or invalidity of or amount of claims. *Fed.R.Evid.* 408. They suggest, for example, that the settlement agreements might be relevant to the issues of their willfulness in infringing the patents, because the settlement agreements suggest that plaintiff had concerns about the risks of the patents being held invalid or uninfringed. However, the court has serious doubts that the patentee's desire to settle infringement claims to avoid these or other risks of litigation establish the alleged infringer's good faith belief that it was not infringing the patent, which is the critical element of the willfulness inquiry. *See, e.g.,* 35 U.S.C. §§ 284–285; *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270 (to prove willful infringement, patentee must prove by clear and convincing evidence that infringer acted in disregard of infringed patent with no reasonable basis to believe it had right to do infringing acts). Even if the alleged infringer's good faith belief that it had the right to do the infringing acts is based on a belief that the patent is invalid, a patent is presumed valid, *see, e.g.,* 35 U.S.C. § 282, and the court doubts that settlement of litigation over the patent, even if that litigation involved the question of the patent's validity, says anything about the validity of the patent, because so many other factors are involved in a decision to settle litigation. The court has even more serious doubts that settlement of an invalidity claim says anything rising to the standard of clear and convincing evidence of invalidity suffi-

---

opened the door for the defendants to introduce the companion settlement agreements.

**3.** This conclusion also answers plaintiff's other relevance objection based on the fact that the settlement agreements all post-date the start of the infringement in this case, the date from which a reasonable royalty is to be calculated. Plaintiff has made the settlement agreements relevant apart from their date. However, the court would also observe that in *Dart Indus.,* the Federal Circuit Court of Appeals rejected a rule, purportedly drawn from *Deere & Co.,* 710 F.2d at 1557, and *Hanson,* 718 F.2d at 1078–79, that would exclude post-infringement evidence from a 1974 settlement agreement as irrelevant to a calculation of a reasonable royalty using a hypothetical negotiation date of 1964, which was when the infringement began:

*Deere* and *[Hanson]* do not establish any rule that all post-infringement evidence is irrelevant to a reasonable royalty calculation. Indeed, most recently, in discussing the hypothetical negotiations methodology, this court stated that "[t]he methodology encompasses . . . flexibility because it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothetical negotiators." * * * Similarly, it was not error for Judge Wright to consider the *Phillips* settlement in this case, even though it was entered into in 1974 and the effective rate Phillips paid under the combined provisions of the settlement could not be determined until the '115 patent expired in 1981.

*Dart Indus.,* 862 F.2d at 1571–72.

cient to overcome a presumption of validity or to create a good faith, reasonable belief of invalidity. *See, e.g., North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (Fed.Cir.1993) (party challenging validity has the burden of proving facts by clear and convincing evidence showing that the patent is invalid, citing *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir.1988)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Morton Int'l, Inc. v. Cardinal Chemical Co.,* 5 F.3d 1464, 1469 (Fed.Cir.1993). Without more, which may become apparent only at trial, the court does not find the settlement agreements relevant to the willfulness issue.

■ Defendants also assert that plaintiff's willingness to settle infringement claims by granting licenses to parties against whom it has brought infringement actions rebuts an argument by plaintiff that it has an "established policy" of not licensing the products in question. Although there may be some relevance of licensing in the context of settlement agreements to the "established policy" question, the relevance does not extend beyond the *existence* of such settlement licensing, and does not extend to the *terms* of those licenses granted in settlement of litigation. Furthermore, a policy of only granting licenses in the context of settlement agreements has double-edged implications. It may demonstrate that there are other licensees of the patents in suit, but it may also indicate that licenses are not granted in the course of normal business, nor willing in any other situation, but only as a last resort when the patentee has already asserted its right to bar unlicensed use by commencing infringement.

The court will not attempt to anticipate other situations, not argued by the parties, in which the settlement agreements might or might not be relevant. However, the discussion of situations in which the settlement agreements might be relevant that fall outside the bar of Rule 408 demonstrates that an across-the-board prohibition of admissibility of the settlement agreements is not appropriate. Thus, the motion in limine is granted to the extent that the settlement agreements are not admissible until and unless their relevance to plaintiff's expert's calculations of a reasonable royalty has been demonstrated. Ruling on the admissibility of the settlement agreements in any other context is reserved pending showing that the circumstances do not fall within *Fed.R.Evid.* 408 and that the settlement agreements are otherwise relevant and not prejudicial.

### C. Motion In Limine Regarding Summary Judgment Ruling

Defendants, for their part, have moved in limine to block the offer, mention, or admission of the Court's March 15, 1995, Order Regarding Motion For Summary Judgment, which held, *inter alia,* that defendants had infringed the '978 patent as well as the '737 patent.[4] Defendants assert that the summary judgment ruling is hearsay for which there is no recognized exception, that it is irrelevant, and that its admission would be prejudicial to the defendants, because its judicial finding of infringement might be given undue weight by the jury in the jury's consideration of the questions of validity and damages for infringement. Plaintiff contends that the jury must be told that the court has found infringement as a matter of law, because a determination of infringement is an essential element to the remaining claims of inducing infringement and willfulness of the infringement by these defendants. Plaintiff also contends that the jury must be told of the court's construction of the patent claims, apparently including within the ambit of "claim construction" the court's conclusion that defendants have infringed the '978 patent.

■ The crux of the issue, as the court understands it, is not so much whether the *ruling* is admissible, but whether the court's

---

4. Defendants did not, and do not now, contest that their devices infringe the '737 patent, relying instead on a defense that both patents are invalid. Defendants have also made plain that they understand the court's decision on infringement precludes them from presenting evidence or argument that they were not infringing either pat- ent. Although the court has determined that the patents in suit have been infringed, the issues of whether Buske can be held individually liable for that infringement, whether Buske induced the other defendants to infringe the patents, and whether defendants' infringement was willful remain to be tried by the jury.

*conclusions* concerning infringement and claim construction are admissible or will otherwise be communicated to the jury. The court finds the authority cited by defendants as holding that the ruling itself is inadmissible to be persuasive. *See Carter v. Burch,* 34 F.3d 257, 265 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995); *United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir.1994); *Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir.1993). However, the court also agrees with the plaintiff that the jury must be advised of the court's construction of the patent, because myriad cases hold that claim construction is a matter of law for the court. *See, e.g., Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed.Cir. 1995); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3068 (July 3, 1995) (No. 95–26); *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1582 (Fed. Cir.1995), *petition for cert. filed,* 63 U.S.L.W. 3908, 1995 WL 380641 (June 15, 1995) (No. 94–2069); *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1196 (Fed.Cir.1994); *Genentech, Inc. v. Wellcome Found., Ltd.,* 29 F.3d 1555, 1561 (Fed.Cir.1994); *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1577 (Fed.Cir.1993). Nonetheless, the court does not agree that such a conclusion requires the court to inform the jury that the court has, as a matter of law, concluded that the defendants have infringed the '978 patent. That part of the court's summary judgment ruling pertaining to construction of the '978 patent involved only the much more limited question of whether the use of the phrase "parallel linkage" in the '978 patent necessarily referred to exact parallel linkage, and the court concluded that it did not. The court finds that the jury may not be prevented from hearing this construction of the patent claim; indeed, it must be so advised in order to consider remaining issues.

■■■ However, the court's finding of infringement involved a second step in the analysis, *i.e.,* whether the claim as properly construed "read" on the accused device, was a question of fact, *see, e.g., Baxter Healthcare,* 49 F.3d at 1582; *North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Morton Int'l, Inc. v. Cardinal Chemical Co.,* 5 F.3d 1464, 1468 (Fed.Cir.1993), although the court made that determination as a matter of law here in the absence of a genuine issue of material fact. The question presented by the motion in limine is therefore whether the jury should be advised of this judicial finding, or whether to do so might cause the jury to give undue weight to a judicial finding of fact in making the remaining factual findings to the prejudice of the defendants.

In rather similar circumstances, involving a determination of infringement in other proceedings sought to be introduced in the present proceedings, the Federal Circuit Court of Appeals approved the district court's analysis which had begun with the question of the relevance of the judicial factual determination. *See Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1568 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). Here, plaintiff asserts that the finding of infringement is relevant to a determination of its claim of inducing infringement, because there can be no finding of inducing infringement unless there has been direct infringement. The court agrees generally with that proposition. *See, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, *reh'g denied,* 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201 (1961); *Sage Prods., Inc. v. Devon Indus., Inc.,* 45 F.3d 1575, 1577 (Fed. Cir.1995); *Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770 (Fed.Cir.1993); *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987); *Porter v. Farmers Supply Serv., Inc.,* 790 F.2d 882, 885 (Fed.Cir.1986). Thus, the court's conclusions that the patents have been directly infringed by the corporate defendants is relevant to the jury's determination of whether the individual defendant induced the infringement by those corporate defendants.

■■■ The court is less convinced of the relevance of its prior determination of in-

fringement to the jury question of the willfulness of that infringement. The questions properly before the jury in deciding the willfulness issue are (1) was the defendant aware of the plaintiff's patent, and (2) did the defendant lack any reasonable basis for reaching a good faith conclusion that the defendant's use or selling of the product in question avoided infringement of the patent. *See, e.g.,* 35 U.S.C. §§ 284–285; *Hilton Davis Chem. Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1519–20 (Fed.Cir.1995) (proof of bad faith may entitle patentee to enhanced damages for willful infringement); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770 (Fed.Cir.1995) (awareness of patent is element of proof of willful infringement); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270 (to prove willful infringement, patentee must prove by clear and convincing evidence that infringer acted in disregard of infringed patent with no reasonable basis to believe it had right to do infringing acts); *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048 (Fed.Cir.1994) (good faith reliance on advice of counsel may disprove willful infringement); *American Medical Sys., Inc. v. Medical Eng'g Corp.,* 6 F.3d 1523 (Fed.Cir.1993) ("willfulness" requires proof by clear and convincing evidence that infringer acted in disregard of patent and had no reasonable basis for believing it had a right to do the infringing acts; proof of "good faith" may avoid "willfulness" determination); *see also* American Intellectual Property Law Association, *Guide To Jury Instructions In Patent Cases* (1990), 16–17 (model instruction on willful infringement); *Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware* (1993), Model Instruction 3.18 (willful infringement). Neither awareness of the patent nor the good faith of the belief that the defendant is not infringing that patent depends upon whether the patent was actually infringed. *See, e.g., State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1235–36 (Fed.Cir.1985) (good faith belief that defendant is attempting to match competitor with own product, without copying, precludes willfulness finding even if patent infringement is ultimately found); *see also Shiley, Inc. v. Bentley Labs., Inc.,* 794 F.2d 1561 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987). The

court believes that the jury can determine either element of the willfulness issue without being first advised that the court has found defendants to have infringed the patents in suit as a matter of law. However, the court concedes whether an award of damages for willful infringement can be made ultimately depends upon whether there has been *any* infringement. Thus, the court's prior determination of infringement is also relevant to this issue left for the jury's determination.

However, the relevance of the prior determination to the questions remaining for the jury to answer does not end the inquiry of whether the court's prior determination is admissible. In *Mendenhall,* the Federal Circuit Court of Appeals approved the district court's further consideration of whether admitting evidence of other judicial determinations of infringement, though relevant, were so prejudicial as to be inadmissible under *Fed.R.Evid.* 403. *Mendenhall,* 5 F.3d at 1568. The district court had considered whether admitting the prior judicial decisions of infringement would have an "undue tendency to suggest decisions on an improper basis," and had found that such an improper basis would be the jury's tendency to follow those decisions on the validity and infringement issues presently before the jury. *Id.* The district court had also concluded that it could not give a proper limiting instruction to remove the prejudice to the defendant. *Id.* The Federal Circuit Court of Appeals approved the district court's analysis:

> In sum, Judge Hansen based his exclusion of the proffered materials relating to prior proceedings even though portions were relevant evidence to some factual issues, on Federal Rule of Evidence 403 [grounds]. He carefully weighed the probative value of the proffered evidence, to the extent relevant, against the danger of unfair prejudice to the defendant, and decided, in his discretion, to keep the proffered materials from the jury primarily because of possible judicial influence on the verdicts.

*Id.* This court will attempt to proceed with similar care.

Here, the court's determination that the defendants have infringed the patents in suit may have some relevance to the remaining issues that are for the jury to decide, inducement and willfulness, as discussed above. However, the court finds that the prejudicial value of the court's prior ruling upon the jury's decisions on the remaining issues is excessive. The jury could conclude on the improper basis of the court's prior finding of infringement as a matter of law, that the patents infringed must be valid. Furthermore, the jury could conclude on the improper basis of the court's prior finding of infringement as a matter of law, that the infringement must have been willful. Thus, the relevance of the prior decision is substantially outweighed by its prejudicial effect. *Fed.R.Evid.* 403; *Mendenhall,* 5 F.3d at 1568.

However, unlike the situation in *Mendenhall,* the court believes that in the circumstances presented here, the court can limit the possible prejudice with proper instructions to the jury concerning what is for the jury to decide, and what is within the province of the court. Thus, the court will instruct the jury that the questions of whether or not the patents have been infringed are for the court to decide, while questions of validity are for the jury. Because the validity question is entirely separate from, and is in fact a defense to, an infringement claim, the jury need not be advised that the court has found infringement as a matter of law in order for the jury to make its determination on the validity issue.[5]

Similarly, the court will instruct the jury that construction of the claims of the patents is for the court, and that the court has construed the '978 patent as not requiring exactly parallel linkages. The court will then instruct the jury that, although the question of whether defendants have infringed the '978 patent is for the court to decide, the jury is to decide whether any infringement ultimately found was willful, based on the jury's determination of whether the defendants were aware of the plaintiff's patent,

and whether the defendants lacked any reasonable basis for reaching a good faith conclusion that their use or selling of the products in question avoided infringement of the patent because, for example, defendant's product lacked exactly parallel linkages.

Finally, as to the question of inducing infringement, which is for the jury to decide, the question for the jury would be, if the court finds that the corporate defendants have infringed the patents, did E.R. Buske induce the corporate defendants to so infringe the patents? Again, the facts the jury must find and consider to make this determination do not involve whether infringement actually occurred. Instead, they involve whether the defendant sold components the jury believes were defined by the patent claims, whether the defendant aided and abetted another in making and using the overall product alleged to be infringing, and whether the defendant had provided labels, advertising, or other sales methods, instructions, and directions to perform the act the jury believed to be infringing. *See, e.g., Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1469 (Fed.Cir.1990) (element of inducing infringement is "inten[t] to cause the acts which constitute the infringement"); *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir.) (same), *cert. denied,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988).

Thus, no part of the court's summary judgment ruling is admissible. Nor is the court's conclusion that the patents in suit have been infringed admissible. The court will issue instructions indicating to the jury that the issue of whether the patents have been infringed is for the court to decide, but that instruction need not and will not indicate that the court has already determined that issue in order to avoid potential prejudice to defendants that might flow from so advising the jury. However, the court's construction of the claim in the summary judgment ruling is admissible and is relevant to the jury's willfulness determination.

---

5. In finding as a matter of law that the patents had been infringed, the court did not address other issues the plaintiff deems to be "infringement issues," such as Buske's individual liability for any infringement, Buske's alleged inducement of other defendants to infringe the patents, and the "willfulness" of the infringement. The jury will be instructed that these remaining "infringement" matters are for it to decide.

*CONCLUSION*

In light of the foregoing, the court concludes that (1) plaintiff's motion in limine to exclude testimony by defendants' expert regarding defendants' ability to pay any given royalty or the "affordability" of that royalty is **denied**; (2) plaintiff's motion to exclude settlement agreements is **granted** to the extent that the settlement agreements are not admissible until and unless their relevance to plaintiff's expert's calculations of a reasonable royalty has been demonstrated, but ruling is **reserved** on the admissibility of the settlement agreements if shown to be offered for a purpose not prohibited by *Fed.R.Evid.* 408; (3) defendant's motion to preclude admission of the court's summary judgment ruling is **granted** to the extent that the ruling itself is inadmissible, but that the court's construction of the patent claims shall be admissible as described herein. The court will instruct the jury on what issues are for the jury's determination, and what issues are for the court, but will not instruct the jury that the court has already determined infringement as a matter of law.

**IT IS SO ORDERED.**

### ORDER REGARDING PLAINTIFF'S MOTION TO RECONSIDER ORDER ON MOTION IN LIMINE CONCERNING SUMMARY JUDGMENT RULING

### *I. INTRODUCTION*

On September 25, 1995, this court entered rulings on three motions in limine on which the court had reserved ruling at the pre-trial conference held September 18, 1995. One of those motions was defendant's motion in limine, filed September 20, 1995, but raised at the September 18, 1995, pre-trial conference, regarding the summary judgment ruling in this matter (docket no. 160). The court granted defendants' motion to the extent that the summary judgment ruling itself is was held inadmissible, but that the court's construction of the patent claims was admissible. The court also ruled that it would instruct the jury on what issues were for the jury's determination, and what issues were for the court, but would not instruct the jury that the court had already determined infringement as a matter of law. On September 27, 1995, plaintiff moved to reconsider that part

of the ruling on the motions in limine regarding admissibility of the summary judgment ruling (docket no. 173).

Plaintiff challenges only that part of the court's ruling that precluded instructing the jury that the court had already determined that defendants' products infringe plaintiff's patents. Plaintiff argues that a finding of infringement is an essential element of remaining issues in the case, such as willful infringement and inducement of infringement. The court acknowledged as much in its September 25, 1995, ruling when it held that a finding of infringement was relevant to matters left for the jury to decide. However, plaintiff contends that the court's ruling would leave the jury "in a total quandary" as to how willful infringement or inducement of infringement can be proved if all of the proofs of infringement are not first demonstrated. Hence, plaintiff asserted that the result of the court's proposed instructions on who was charged with deciding what issues, without informing the jury that the court had already found infringement as a matter of law, was "unworkable" and prejudicial to the plaintiff.

The plaintiff therefore proposed the following limiting instruction:

Ladies and gentlemen of the jury, in a proceeding before the commencement of this trial, the Court has already determined that the Defendant companies' products infringe each of the patents-in-suit. The consequences, if any, of that determination are for you to decide along with the issues of inducement of infringement by the personal defendant Earl Buske, personal liability of Mr. Buske for the infringing products made and sold by the corporate Defendants, damages, if any, that might be awarded to the Plaintiff for the infringing products, and whether the Defendants have overcome the presumption of validity of each of the patents-in-suit by clear and convincing evidence to establish invalidity of each of the patents-in-suit.

The court had previously provided to the parties proposed preliminary jury instructions in keeping with its ruling on the motion

in limine. Plaintiff found both the ruling and the proposed instructions objectionable.

The court held a pre-trial telephone conference with the parties at which, *inter alia*, the court heard arguments on plaintiff's motion to reconsider. At the telephone conference, defendants asserted in resistance to plaintiff's motion for reconsideration that in its September 25, 1995, ruling the court had properly analyzed the relevance and potential prejudice to the defendants of advising the jury of the court's prior determination of infringement as a matter of law. Defendants therefore oppose plaintiff's proposed alternative limiting instruction.

## II. CONCLUSIONS OF LAW

 Plaintiff's renewed objections to the ruling on the motion in limine are not dependent upon the manner in which presentation of facts may unfold at trial, but rather are directed at a definitive ruling that affects the entire course of the trial; thus, no renewed objection is required to preserve for appeal any error in the court's ruling. *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1066 (8th Cir.1995) (distinguishing between rulings on motions in limine for which further objection is required to preserve error and those for which further objection would be a mere formality, citing *Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1118 (8th Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986)). Nonetheless, plaintiff's motion appears to assert that the court made a legal error in ruling on the motion in limine by considering the prejudice to the defendants of admitting the court's conclusions on infringement without giving due regard to possible confusion of the jury or other prejudice to the plaintiff resulting from a failure to advise the jury of those conclusions, and the court wishes to address any such legal error. *See, e.g., Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.) (the "'limited function'" of a motion for reconsideration of a judgment pursuant to *Fed.R.Civ.P.* 59(e) is "'to correct manifest errors of law or fact or to present newly discovered evidence,'" quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir.1987), quoting in turn *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp.

656, 665–66 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984)), *cert. denied*, 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988).

The court does not retreat from its prior conclusions that admission of the ruling in question could be prejudicial to the defendants, because it might have an "undue tendency to suggest decisions on an improper basis," *see Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1568 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). The court's concern was and is that the jury could conclude on the improper basis of the court's prior finding of infringement as a matter of law, that the patents infringed must be valid. Furthermore, the jury could conclude on the improper basis of the court's prior finding of infringement as a matter of law, that the infringement must have been willful. Thus, the relevance of the prior decision is substantially outweighed by its prejudicial effect. *Fed.R.Evid.* 403; *Mendenhall*, 5 F.3d at 1568. Nor does the court retreat from its conclusion that the situation here is distinguishable from that in *Mendenhall*, because, in the circumstances presented here, the court can limit the possible prejudice with proper instructions to the jury concerning what is for the jury to decide, and what is within the province of the court.

 However, upon careful reconsideration, the court does agree with plaintiff that confusion to the jury could result if the jury is asked to make a determination of the issues that remain within its province without being advised of the court's prior determination of infringement. The determination of infringement is an essential element of the remaining claims of inducing infringement, and willfulness of infringement, and is relevant to the question of damages for infringement. Although the court previously recognized the relevance of its infringement determination to remaining issues, the court may have given undue weight to the prejudicial effect of the ruling despite its relevance without due regard to possible confusion of the jury and resulting prejudice to both the plaintiff and defendant if the jury was not advised of that determination of infringement. Thus, causing or allowing confusion

on the part of the jury, with the possible consequence of prejudice to the plaintiff *and* the defendant, may well amount to "manifest legal error" requiring alteration of the court's prior ruling. *Hagerman,* 839 F.2d at 414.

The question, as the court perceives it on reconsider, is whether a *better* means can be found to limit any prejudice to the defendants while preventing jury confusion and resulting prejudice to the plaintiff. The court originally held that prejudice to the defendants could be limited by advising the jury that the court would decide the question of whether defendants' products infringed plaintiff's patents, without advising the jury that the court had already made that determination favorable to the plaintiff. Plaintiff has proffered two possible alternatives.

Plaintiff's first alternative is that the court simply inform the jury that it has decided the issue of infringement, because any resulting prejudice to defendants would not be "undue prejudice." *Fed.R.Evid.* 403. The court rejects this solution, as failing to address the "undue prejudice" to the defendants. Plaintiff has misconstrued the nature of that prejudice, which is not simply the result of the adverse judgment, but the prejudice of improper influence of the court's decision on the determination by the jury of other issues that are legally or factually severable from the matters the court has decided.

Plaintiff's second alternative, offered at the telephonic pre-trial conference on September 28, 1995, is that the jury be told nothing about who is to decide what prior to trial of the case, thus allowing the trial of this patent litigation to proceed in a "normal" order and manner. However, plaintiff suggests that, *prior to submission of the case to the jury* and prior to or in the final instructions, the jury should be told that the court has decided as a matter of law that defendants' products are infringing. The court believes that the potential prejudice to defendants of this last-minute revelation is obvious. It is precisely the same prejudice the court identified above, but heightened by its disclosure so near to the jury's own deliberations.

The court therefore concludes that the intellectually honest and most effective means of limiting any prejudice to any party is to do

more than simply advise the jury that the court has decided, in proceedings prior to trial, that defendants' products infringe plaintiff's patents. The instruction so advising the jury must explain further, in the strongest possible terms, that the court's determination of infringement of the patents has no significance for how the jury is to determine the questions presented to it, and does not suggest that the court has any opinion on those issues. The jury should be further advised that it must come to its own conclusions on the questions presented to it free from bias, prejudice, or any influence or inference from the court's determination of infringement.

Thus, the court will make the following preliminary instruction to the jury:

In proceedings before trial, I determined that products made and distributed by the defendants infringe plaintiff's patents. However, you, the jury, will decide whether and to what extent, if any, Mr. Buske should be found personally liable for inducing any infringement of the patents by the Buske companies, whether any infringement by any defendant was willful, and what damages, if any, plaintiff is entitled to for infringement of its patents by these defendants. My determination that defendants' products infringe plaintiff's patents should have absolutely no impact on how you decide the questions you are asked to decide. You are free to find Mr. Buske liable or not liable for inducing infringement, to find that infringement by any of the defendants was or was not willful, or to find that some damages or no damages should be awarded for patent infringement. Nor does my determination on any question presented to me mean that I have any opinion on any of the questions that are for you to decide.

You will also decide the question of the validity of the patents. Even if the patents have been infringed, defendants cannot be held liable for patent infringement if you find that the patents are invalid for any reason. Whether a patent is valid and whether a patent has been infringed are entirely separate questions. Therefore, my determination that the defendants'

products infringe plaintiff's patents has absolutely no significance for your determination of whether the patents are valid or invalid. Nor should you infer from my determination that defendants' products infringe plaintiff's patents that I have any opinion on whether the patents are valid or invalid.

Remember, you are to decide each of the questions presented to you solely on the basis of the facts as you find them to be and your own application of those facts to the law which I will give you in these preliminary instructions, during trial, and in the final instructions at the conclusion of the case. Your decision on each of the questions presented to you must be yours, and yours alone, reached without bias or prejudice, and without any influence from any decision I may have made on questions presented to me to decide.

The court believes that such an instruction, with comparable instructions where appropriate at later phases of the trial, will reserve to the jury questions that are properly for it to determine without engendering confusion or subjecting any party to undue prejudice.

### CONCLUSION

Plaintiff's motion to reconsider is granted to the extent that the court has reconsidered its prior ruling and has, in light of that reconsideration, crafted an instruction to the jury that will obviate confusion on the part of the jury, with consequent prejudice to both parties, while preserving the defendants from the undue prejudice that might result from revelation of the court's prior determination of infringement. The court's instruction will be incorporated into the preliminary instructions to the jury and comparable instructions will be given, where necessary, during trial and in the final instructions to the jury.

**IT IS SO ORDERED.**

Sept. 29, 1995.